Harris L. BRINKER, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 1777.

Municipal Court of Appeals for the District of Columbia.

Argued April 16, 1956.

Decided May 24, 1956.

Alfred M. Schwartz, Washington, D. C., for appellant.

Richard W. Barton, Asst. Corp. Counsel, with whom Vernon E. West, Corp. Counsel, Chester H. Gray, Principal Asst. Corp. Counsel, Milton D. Korman and Hubert B. Pair, Asst. Corp. Counsel, were on the brief, for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

QUINN, Associate Judge.

Appellant, a taxicab driver, was convicted of violating Section 52(a) of the Traffic and Motor Vehicle Regulations for the District of Columbia. Section 52(a) provides in part:

" * * * the driver of a vehicle shall yield the right-of-way, slowing down or stopping if need be to so yield, to a pedestrian crossing the roadway within a crosswalk * * *."

The alleged violation took place at night at Adams Mill Road and Lamont Street, N.W. Appellant was proceeding in a southerly direction on Adams Mill Road and collided with a pedestrian, who was removed to a hospital before the police arrived. He died six days later. At trial, without a jury, only two witnesses testified—a police officer from the Accident Investigation Unit and appellant.

Bringing this appeal appellant contends that the trial court erred in admitting in evidence, over objection, alleged admissions made to the police officer at the scene of the accident, in the absence of evidence from another source of a violation of the ordinance. In view of the nature of this contention, we find it necessary to recite the more important parts of the testimony.

Adams Mill Road runs in a northerly and southerly direction and is thirty feet wide. Lamont Street is thirty-four feet wide. Walbridge Place runs in a northerly and southerly direction and intersects Lamont Street east of Adams Mill Road. It intersects Adams Mill Road approximately fifty-three feet south of Lamont Street, thus creating a triangular island fifty-three feet long on Adams Mill Road.

Photographs introduced in evidence revealed that on the south side of Lamont Street, east of Walbridge Place, the sidewalk was approximately six feet wide and there was a six-foot tree space between the south curb of Lamont Street and the north edge of the sidewalk. There were no marked crosswalks indicated for pedestrians crossing Adams Mill Road at Lamont Street.[1]

The police officer, who came on the scene after the collision, testified that he observed a 1956 Plymouth taxicab facing in a southerly direction on Adams Mill Road, the front of which was approximately eighteen feet south of the south curb line of Lamont Street. He further testified that he observed skid marks and determined that the taxicab laid down skid marks of thirty-one feet overall, and that toward the southerly end the skid marks swerved slightly to the right. He also observed blood and some bloodstained bandages in the roadway approximately ten feet south of the front of the taxicab.

Over objection, he testified that appellant, when asked where the pedestrian was

1. D. C. Traffic and Motor Vehicle Regulations Part I, Art. I, Section 2: "*Crosswalk*.—(a) That part of a roadway at an intersection included within the connections of the lateral lines of the sidewalks on opposite sides of the highway measured from the curbs, or in the absence of curbs, from the edges of the traversable roadway."

when struck, indicated a place in the roadway beneath the standing taxicab, which was later determined by the officer to be six feet east of the west curb of Adams Mill Road and eleven feet south of the projection of the south curb of Lamont Street. Appellant told the officer that he was proceeding south on Adams Mill Road with three passengers (who have since left this country); that he was traveling between twenty and twenty-five miles per hour; that his headlights picked up a dark object near the center of Adams Mill Road at Lamont Street when he was about three car lengths away; that he quickly realized the dark object was the figure of a man; and that he attempted to avoid colliding with the pedestrian by turning his taxicab to the right, but was unsuccessful.

The officer also testified concerning an interview with the pedestrian at the hospital. The pedestrian stated that he was eighty-five years of age; that on the night of the collision he was wearing dark clothes; that he crossed Walbridge Place and walked to the right of the safety island; and that while attempting to cross Adams Mill Road, was struck by the taxicab.

The government rested. A motion to strike the testimony of the officer and also a motion for judgment of acquittal were argued and denied. Appellant then testified that he was traveling between twenty and twenty-five miles per hour; that when he was somewhat north of Lamont Street (he did not know the exact place), he saw, not more than three car lengths away, a dark object near the center of Adams Mill Road; and that he attempted to stop his taxicab by applying his brakes and swerving to the right. He stated that the left front of the taxicab came in contact with the pedestrian and carried him for a distance until it came to a stop when he rolled forward off the taxicab to a position in the roadway about ten feet in front of it. He testified further that the pedestrian was not in the crosswalk when struck, and that he pointed out to the officer at the scene a

place on Adams Mill Road within the intersection and north of the south crosswalk where he thought the left front of his taxicab struck the pedestrian.

On cross-examination appellant stated that he did not slow down as he entered the intersection of Lamont Street until he saw the pedestrian, whereupon he applied his brakes and tried to drive between the pedestrian and the west curb of Adams Mill Road. He admitted that when he was questioned by the police at the scene of the accident, he indicated an area of the roadway approximately beneath the center of the standing taxicab as the place where the pedestrian was when first seen. He explained, however, that he was excited at that time; that he was incorrect; and that what he testified to on direct examination was the correct version as to the location of the pedestrian when he was struck. There was also testimony that after the collision the taxicab was inspected and found to be in proper mechanical condition. Motions made on behalf of appellant were renewed and denied.

 With these facts to guide us, we consider the points raised by appellant. Appellant argues that the court should not have admitted in evidence the extrajudicial admissions before the corpus delicti was established by independent evidence, and that the court should have stricken the testimony of the police officer on the ground that there was no corroborative evidence. In answer to appellant's first argument, it is sufficient to point out that the order in which evidence to prove the corpus delicti is to be received is largely a matter within the discretion of the trial court.[2] However, appellant's second argument requires a more lengthy answer. The corpus delicti to be proved in this case was the failure to yield the right-of-way to a pedestrian within a crosswalk. Appellant made an admission after the collision to a police officer which had the effect of placing the pedestrian in the crosswalk. That a conviction could not stand based solely on this admission needs no citation of authority. There

2. Ridgell v. United States, D.C.Mun.App., 54 A.2d 679.

must be corroboration which, of course, may be supplied by circumstantial as well as direct evidence.[3] Further, the corroborative evidence does not have to prove the offense beyond a reasonable doubt, or even by a preponderance, as long as there is substantial independent evidence that the offense was committed, and the evidence as a whole proves beyond a reasonable doubt that the defendant is guilty.[4] Here, appellant testified in his own behalf after his motion for judgment of acquittal was overruled and therefore we can search for corroboration in his proof as well as in that of the government.[5] With these rules to guide us, we can now proceed to a determination of whether the trial court was correct in holding that there was sufficient corroboration.

■■ Heretofore, there existed some divergence of opinion in the federal appellate courts as to the quantum of corroborative evidence necessary to sustain a judgment of conviction.[6] This matter has been laid to rest by the recent pronouncements of the Supreme Court in the Opper [7] and Smith [8] cases, wherein it was held that the corroborative evidence need not be sufficient, independent of the admission, to establish the corpus delicti, but the government must introduce substantial independent evidence which would tend to establish the trustworthiness of the admission. The corroboration is sufficient if it supports the essential facts admitted to such a degree that a jury would be justified in inferring that the admission was true. Thus, all the elements of the offense must be established by independent evidence or corroborated admissions and where an element of the corpus delicti is supplied by an admission alone, the prosecution must provide sub-

stantial independent evidence to show the trustworthiness of that admission.

■ In this case the record shows substantial independent evidence to establish the truthfulness of appellant's admission. When asked by the police officer where the pedestrian was when collided with, appellant indicated a point in the roadway beneath the standing taxicab. The officer determined this point to be six feet east of the west curb of Adams Mill Road and eleven feet south of the projection of the south curb of Lamont Street. According to the Traffic Regulations, that space within the lateral lines of the sidewalks on opposite sides of the highway measured from the curbs is a crosswalk. The south lateral line of the sidewalk on Lamont Street extended across Adams Mill Road would intersect twelve feet south of the south curb line of Lamont Street. Since appellant indicated a point eleven feet south of the south curb line of Lamont Street, there can be no doubt that he pointed to a place within the crosswalk.

There was evidence before the court that the blood and bloodstained bandages were about ten feet in front of the taxicab and that the body of the pedestrian came to rest about ten feet in front. There was evidence that the front of the taxicab was eighteen feet south of the south curb line of Lamont Street when it came to a stop and that the taxicab laid down a thirty-one-foot overall skid mark, said skid marks swerving slightly to the right toward their southerly end. Appellant testified that he turned to the right in an attempt to drive between the pedestrian and the west curb of Adams Mill Road. He also testified that the wheels of the taxicab were about six feet from the west curb of Adams Mill

3. Ercoli v. United States, 76 U.S.App.D.C. 360, 131 F.2d 354; Solar v. United States, D.C.Mun.App., 94 A.2d 34, 35 A.L.R.2d 1039.

4. Smith v. United States, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192.

5. United States v. Calderon, 348 U.S. 160, 75 S.Ct. 186, 99 L.Ed. 202; Ercoli v. United States, supra.

6. See Daeche v. United States, 2 Cir., 250 F. 566, and Forte v. United States, 68 App.D.C. 111, 94 F.2d 236, 127 A.L.R. 1120.

7. Opper v. United States, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101, 45 A.L.R.2d 1308.

8. Smith v. United States, supra.

Road when he first saw the pedestrian and three feet from the same west curb when he struck him. Further, appellant offered testimony as to how far away the pedestrian was when he first saw him. He originally stated that the pedestrian was not more than three car lengths away but then later amplified and clarified this by testifying that he did not slow down as he entered the intersection until he saw the pedestrian. At the intersection, Lamont Street is thirty-four feet wide. If appellant first saw the pedestrian as he entered the intersection and he was approximately three car lengths away, it would have been difficult for the trial court to have believed that the pedestrian was in any other area than where appellant claimed in his admission.

Such a pattern of evidence is, we think, sufficiently corroborative to satisfy the rule enunciated in the Opper and Smith cases and therefore the judgment of the trial court must be

Affirmed.