Carl I. SANDERSON, Appellant,

v.

UNITED STATES, Appellee.

No. 1836.

Municipal Court of Appeals for the District of Columbia.

Argued July 16, 1956.

Decided Aug. 9, 1956.

J. Ambrose Kiley, Washington, D. C., for appellant.

Milton Eisenberg, Asst. U. S. Atty., with whom Oliver Gasch, U. S. Atty., Lewis Carroll and Forbes Blair, Asst. U. S. Attys., were on the brief, for appellee. Richard J. Snider, Asst. U. S. Atty., also entered an appearance for appellee.

Before HOOD and QUINN, Associate Judges, and CAYTON (Chief Judge, Retired) sitting by designation under Code, § 11–776(b).

CAYTON, Acting Judge.

After a trial without a jury, appellant was convicted of negligent homicide, Code 1951, § 40–606. He brings this appeal.

At the trial it was stipulated that on the afternoon involved, an ambulance was called to 17th and P Streets, N. W., where an elderly lady had been struck by an automobile; that the lady was taken to a hospital, where she died three hours later; and that her death was caused by a fractured skull and fractured pelvis, hemorrhage and shock.

The Government's case consisted of the testimony of two police officers, certain photographs, and a chart of the intersection where the fatal injury occurred. Most of the officers' testimony related what defendant had told them after the event, and was in substance as follows:

The first officer testified that he reached the scene after the lady had been taken away. Using a chart he gave measurements of the intersection, which was a right angled one, also measurements of the sidewalks on the south side of P Street, to the east and west of 17th Street. The record recites that the officer testified:

"that there was a 6′ skid mark 3 to 4′ south of the south curb of P Street and 18′ east of the west curb of 17th Street; that there was a scuff mark located 12′ south of the south curb of P Street which was 2′ long running north and south, 18′ from the west curb of 17th Street; that another scuff mark was located 33′ from the south curb of P Street; that the automobile in question was 20′ south of the south curb of P Street."

The officer further testified that defendant said he had been driving west on P Street and stopped at the stop sign at 17th Street, intending to make a left turn south into 17th Street, and the driver of a truck coming from his left, north on 17th Street, motioned for him to come ahead; that proceeding into the intersection "he looked north and south on 17th Street, "and not seeing anything" continued to make his left turn; that when he was about even with the south curb of P Street he saw the lady pedestrian about 3 or 5 feet in front of his car; that though he applied his brakes, he struck the pedestrian. The officer said defendant identified the skid marks found in the crosswalk area as having been made by his automobile and said he believed the pedestrian "must have been in the crosswalk". Defendant also identified the scuff marks found 12 feet south of the south curb of P Street and 18 feet east of the west curb of 17th Street as the probable point of impact, and identified the scuff mark on 17th Street, 33 feet south of the south curb of P Street, as the approximate place the body of the pedestrian came to rest. When questioned about the smudge marks on the forward end of the fender of his car, defendant said that was the part of his automobile which struck the pedestrian. He approximated his speed at 5 to 10 miles per hour and said he was unable to account for his failure to see the pedestrian.

The second officer said he had three talks with defendant, one at the hospital, one at the scene of the injury, and one at the Accident Prevention Unit. He testified that defendant told him that when he stopped at the 17th Street stop sign a large dump truck coming north had gone past the south corner, attempting to make a U turn.

Then, according to the officer, defendant said:

"that the driver of the truck motioned him on, so he pulled out a few feet further so he could see what was up and down the street; that there was nothing coming; that there was no traffic except the truck; that as he turned into the center lane of 17th Street, and when he was about even with the south curb of P Street, he observed a lady 'walking fast' about 5 or 6' east of the west curb of 17th Street; that she was in the crosswalk heading east and he stopped just about the time he struck her."

There was introduced in evidence a photograph of the area looking north on 17th Street, and showing the 6 foot skid mark in the P Street crosswalk area; also a photograph of defendant's automobile plainly showing smudge marks where dirt and dust particles had been removed from the left headlight and fender.

At the Government's request the trial judge took judicial notice of certain applicable traffic regulations.[1]

Defendant did not take the stand in his own behalf, nor did he present any witnesses. The judge, as we have said, found him guilty.

Four errors are assigned, but we shall consider them together, because they center around the single question as to whether defendant was entitled to an acquittal as a matter of law. The contention is that the record does not support a conviction because the prosecution did not produce substantial independent evidence to corroborate the extrajudicial admissions made by defendant to the police officers.

This is by no means a novel question. It has been the subject of lengthy discussion by many text writers and courts, including our highest tribunals. In Forte v. United States, 68 App.D.C. 111, 94 F.2d 236, 240, 127 A.L.R. 1120, it was held that corroboration is not sufficient if it tends merely to support a confession without also embracing "substantial evidence of the corpus delicti". But the opinion went on to say that the supporting testimony need not *independently* establish the corpus delicti beyond a reasonable doubt if such evidence and the confession together are convincing beyond a reasonable doubt of the commission of the crime and defendant's connection therewith. Not long afterwards the same court, in affirming a conviction in a negligent homicide case (brought under the same statute as this case) held that the "rule of corroboration * * * does not require proof beyond a reasonable doubt. Neither does it require direct evidence. Circumstantial evidence may be sufficient for the purpose * * *". Ercoli v. United States, 76 U.S.App.D.C. 360, 131 F.2d 354, 358. This court has twice applied the same general principles in holding that conviction may be had in a negligent homicide case on the basis of extrajudicial admissions supported by circumstantial rather than direct evidence. Ridgell v. United States, D.C.Mun.App., 54 A.2d 679; Solar v. United States, D.C.Mun.App., 94 A.2d 34. And a few weeks ago in Brinker v. District of Columbia, D.C.Mun.App., 122 A.2d 768, we had occasion to apply the same rule in a similar case, also involving a fatality, where a motorist was charged with failing to yield the right of way to a pedestrian within a crosswalk. We held that there was substantial independent evidence to establish the truthfulness of admissions which defendant had made to a police officer. We also held that corroboration may be supplied by circumstantial as well as direct evidence. We cited the recent decisions of the Supreme Court in Opper v.

1. D.C.Traffic and Motor Vehicle Regulations: Sec. 52 gives pedestrian right of way in crosswalks; Sec. 54 requires motorist to use due care to avoid colliding with any pedestrian upon any roadway; Sec. 99 requires that he give his full time and attention to operation of his vehicle.

United States, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101, and Smith v. United States, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192, which discussed with finality the quantum of corroboration of an admission or confession demanded by the law to sustain a conviction.

In the Opper case the Court said among other things, "Each case has its own facts admitted and its own corroborative evidence * * *. However, we think the better rule to be that the corroborative evidence need not be sufficient, independent of the [extrajudicial] statements, to establish the corpus delicti". [348 U.S. 84, 75 S.Ct. 164] The Court also said, "It is sufficient if the corroboration supports the essential facts admitted sufficiently to justify a jury inference of their truth". Along with the Ercoli case, our decisions in the Ridgell and Solar cases, to which we have referred, are cited in the Annotation to this decision, 99 L.Ed., at page 121.

And in the Smith case, decided the same day, the Supreme Court held that the corroborative evidence need not prove the offense beyond a reasonable doubt, or even by a preponderance, as long as there is substantial independent evidence that the offense was committed, and the evidence as a whole proves beyond a reasonable doubt that the defendant is guilty. The opinion went on to say that it is sufficient if the corroboration merely fortifies the truth of the confession, without independently establishing the crime charged.

We shall now apply these guides to the case before us. It has been said and repeated [2] that in prosecutions under our negligent homicide statute the corpus delicti consists of three elements: (1) the death of a human being, (2) by instrumentality of a motor vehicle, (3) operated at an immoderate speed or in a careless, reckless or negligent manner, but not wilfully or wantonly.

The first element was established by the stipulation we have described.

The second element, that the defendant operated the striking vehicle, was established not only by defendant's admission but by ample evidence aliunde. We refer to the presence of defendant and his automobile at the immediate scene, the skid marks leading to the point of impact, as independently testified to by the officer and revealed in a photograph, also the smudge marks of impact on the headlight and fender as shown in a second photograph, and the nature and character of the victim's injuries. Even if defendant had not uttered a word to the officers, all these facts combined to prove, circumstantially at the very least, that it was defendant who drove the car which struck the pedestrian. It would be unrealistic, if not indeed fatuous, to say that this evidence did not support the trustworthiness of defendant's own admissions.

Most of what we have just said applies as well to the third element: defendant's negligence. Defendant admitted that he did not see the lady pedestrian until he was even with the south curb-line of P Street, when she was 3 to 5 feet away, and that he could not account for his failure to see her sooner. This was clearly negligence. American Ice Co. v. Moorehead, 62 App.D.C. 266, 66 F.2d 792; Davis v. District of Columbia, D.C.Mun.App., 91 A.2d 14, and cases there cited. Was this admission by defendant sufficiently corroborated? The injury took place in mid-afternoon, and there was no suggestion of obstructions or bad visual conditions. The officers' testimony (which we need not recite again) provided a full description of the lay-out of the intersection and the distances between the important points, including the crosswalks. (The testimony was that the crosswalks were not painted; but neither the applicable traffic regulations nor general

2. See, supra, Ercoli v. United States, Ridgell v. United States, Solar v. United States.

rules of negligence limit a pedestrian's protection to marked or painted crosswalk areas.) The independent testimony established, at least circumstantially, that the lady was in the crosswalk when she was struck and that she was hurled or pushed some twenty feet. These circumstances, considered alone, bespoke negligence. See Ercoli v. United States, supra. Considered together with defendant's admissions, they more than met the tests prescribed by the Supreme Court and authorized an inference by the judge as trier of the facts that defendant was negligent. Clearly the judge was justified in finding defendant negligent by ordinary and usual standards of care. Or under the applicable traffic regulations he had a right to conclude that defendant was not keeping a proper look-out, or that he failed to yield right of way to the pedestrian, or that he was not giving his full time and attention to his driving, or indeed that he was guilty of negligence in all those ways. In short the evidence permitted a conclusion or inference that defendant was negligent and that his negligence caused the death.

Affirmed.