Donald **TOWNSEND,** Appellant,

v.

**UNITED STATES,** Appellee.

No. 83–1267.

District of Columbia Court of Appeals.

Argued Oct. 24, 1985.

Decided July 28, 1986.

Jefferson M. Gray, with whom Robert L. Weinberg, Washington, D.C., was on briefs, for appellant.

Mary Ellen Abrecht, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell and Barry M. Tapp, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before NEBEKER, BELSON, and STEADMAN, Associate Judges.

BELSON, Associate Judge:

Donald Townsend was convicted of first-degree felony murder, attempted robbery while armed, and carrying a pistol without a license. On appeal, he asserts that (1) the passage of nearly 13 months between his arrest and trial violated his right to a speedy trial, (2) the prosecutor failed to correct an inaccurate statement of a government witness, and misled the jury when he said a key witness had derived no benefit from cooperating with the government, (3) the trial court erred in permitting the prosecutor to impeach him with an answer to a routine question he gave the police after he invoked his *Miranda* rights, and (4) the trial court abused its discretion in refusing to grant a new trial based on newly discovered evidence and ineffective assistance of counsel. We affirm the felony murder and carrying a pistol without a license convictions, and remand to the trial court for vacation of the attempted robbery

conviction because it merged with the felony murder conviction.

In describing the factual and procedural background of this case, we will include the degree of detail necessary for consideration of both the speedy trial claim and a harmless error analysis. On March 18, 1982, sixteen-year-old Cash Walker encountered an acquaintance, appellant Donald Townsend. Townsend needed money. They plotted to rob a local marijuana dealer, Francis Gantt. Townsend was carrying a gun. Walker borrowed one from a friend. Walker and Townsend then recruited Anthony Pixley (known to Walker and Townsend as "Andy"), who retrieved his own revolver.

On the way to Gantt's apartment, the three agreed that Walker would knock on the door, and when Gantt answered, the others would rush in. When they arrived at Gantt's home, Walker knocked on the door, and Gantt invited him in. Walker went inside, and as Gantt was closing the door, Pixley and Townsend tried to force their way in. Gantt resisted, and Pixley fired three shots. Two shots hit Gantt in the chest; one hit Walker in the stomach. Gantt forced his way past his assailants, was shot again, this time by Townsend, and staggered out of the building. He soon died from massive hemorrhaging. The three assailants ran back to their car, and eventually the other two took Walker to a hospital.

News of the shootings quickly spread through the neighborhood. On March 23, Sergeant Daly of the Metropolitan Police Department received an anonymous phone call informing him that Townsend, Walker, and a third person known to the caller only as "Andy" were responsible for Gantt's death. The following day, two detectives arrested Walker as he was being released from the hospital. Walker confessed to his involvement in the Gantt slaying and implicated Townsend and "Andy." A warrant

for Townsend's arrest was issued on March 24.

On March 30, an attorney hired by the Townsend family called the police and made arrangements for Townsend to turn himself in. The police and the lawyer agreed that Townsend would not be questioned beyond those questions needed to complete the PD 163, a prosecution report form. Townsend turned himself in on March 31, and answered the questions the police asked in order to complete the PD 163. He was assigned counsel, presented to the court, and released on his personal bond.

On April 6, the anonymous caller identified himself to the police as Carlos Quinones. Quinones told the police that Townsend had told him that he had participated in the assault. Quinones also promised to get the license number of the car that belonged to the as yet unidentified third person. In return for his cooperation, Quinones asked the police to help him with an outstanding bench warrant for petit larceny.

On April 9, 1982, the Superior Court grand jury heard testimony against Townsend. Almost 10 months later, on February 3, 1983, the grand jury returned an indictment against Townsend for first-degree felony murder, attempted robbery, and carrying a pistol without a license.

On May 2, 1983, Townsend's trial began. On the 4th, while the jury was deliberating, a mistrial was declared at Townsend's request because a juror recognized one of Gantt's relatives, and declared that he could no longer be impartial. A new jury was impaneled on May 23. On May 25, that jury found Townsend guilty as charged. This appeal followed.

I

Townsend asserts that his Sixth Amendment right to a speedy trail was violated because there was a delay of more than a year between his arrest and his trial.[1] The

---

1. The complaint against Townsend was dismissed on January 13, 1983, approximately three weeks before he was indicted. We do not consider this period in analyzing whether Town-

Sixth Amendment provides that "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, ..." In *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court set forth four factors to be balanced to determine whether a defendant's right to a speedy trial had been infringed: (1) length of delay, (2) reason for delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *Id.* at 530, 92 S.Ct. at 2191.

■ In this jurisdiction, a delay of a year or more, as there was here, gives prima facie merit to a claim of denial of the right to a speedy trial, and shifts the burden to the government to justify the delay. *Graves v. United States*, 490 A.2d 1086, 1091 (D.C.1984) (en banc). A delay of that length, of course, does not conclusively establish a speedy trial claim; rather it requires that the court analyze the three remaining *Barker* factors to determine if reversal is warranted.

Upon doing so, we observe first that Townsend never asserted his right until this appeal. His continued indifference to his right, not merely before he was indicted, but all the way through the proceeding in the trial court, cripples his claim. *See Rink v. United States*, 388 A.2d 52, 58–59 (D.C.1978) (when defendant raises speedy trial claim for the first time on appeal, court should weigh lack of prior assertion heavily against claim); *cf. Barker v. Wingo*, 407 U.S. at 531, 92 S.Ct. at 2192 (defendant's assertion of his right entitled to strong evidentiary weight).

■ Townsend also argues that he was seriously prejudiced by the delay. He first asserts that he was subject to great anxiety between arrest and trial. Although reducing the anxiety and concern of the accused is one of the three principal interests the speedy trial right is designed to protect, *Barker*, 407 U.S. at 532, 92 S.Ct. at

2192, the fact that the accused is subjected to uncertainty about his future does not mandate reversal. Rather, it requires that the court balance the impact of that uncertainty against other factors to determine whether his constitutional right to a speedy trial has been infringed.

■ We find ourselves unpersuaded by Townsend's next argument, namely, that the delay impaired the presentation of his defense. Townsend asserts that because of the delay, his witnesses could not testify where he had been on the day Gantt was shot. Townsend knew, however, 12 days after the shooting that he was accused of Gantt's slaying. After he turned himself in, he was assigned counsel, and presented to the court. Within two weeks, the court conducted a preliminary hearing. During that period, Townsend could have secured statements from witnesses so that at trial their memories could have been refreshed if they failed to recall pertinent details. An appellant cannot predicate prejudice upon his own failure to commence his defense efforts. *See Jefferson v. United States*, 382 A.2d 1030, 1032–33 (D.C.1978).

■ Lastly, Townsend claims there was no good reason for the delay, and that the government was willfully indifferent to his Sixth Amendment rights. The government proffered at oral argument, however, that it delayed indicting Townsend because it wished to strengthen its case against Anthony Pixley, and then try the defendants jointly. In connection with his recent motion requesting a stay on the speedy trial issue pending a hearing by the Superior Court pursuant to D.C. Code § 23–110, Townsend suggests that as an alternative to a stay pending such a hearing, the government's explanation "should be accepted at face value." Townsend does not argue that the government deliberately delayed indicting him to hamper his defense

---

send's right to a speedy trial was infringed. *United States v. MacDonald*, 456 U.S. 1, 7 & n. 7, 102 S.Ct. 1497, 1501 & n. 7, 71 L.Ed.2d 696 (1981). Thus, for analytical purposes, we as-

sume that the delay between arrest and trial totaled approximately 12 months and 10 days. The three week difference is inconsequential.

or gain a tactical advantage. Accepting at face value, as Townsend suggests, the government's explanation that it was trying to build a case against Pixley so that all three defendants could be tried jointly, we are of the view that the proffered reason does not excuse the delay or render it neutral. Yet we think it does not weigh heavily against the government, as it was not intended to gain a strategic advantage as such over Townsend, but rather was apparently intended to realize the generally recognized benefits that attend joint trials. *See Davis v. United States*, 367 A.2d 1254, 1263 (D.C.1976), *cert. denied*, 434 U.S. 847, 98 S.Ct. 154, 54 L.Ed.2d 114 (1977) (joinder promotes economy and efficiency and avoids multiplicity of trials).

■ In sum, when we weigh those factors which arguably support Townsend's claim—that the delay was for more than 1 year, and that, during that time, he suffered the anxiety commonly experienced by persons accused of crimes—against those that undercut his claim—that the delay alone did not prejudice his defense, that the government did not deliberately delay the proceedings so as to gain a tactical advantage, and, most telling, that Townsend never asserted his right until this appeal—we hold Townsend's right to a speedy trial was not infringed.[2]

## II

■ Townsend also seeks reversal on the basis that he was prejudiced by four instances of prosecutorial misconduct. He argues that the prosecutor failed to correct Quinones' statement at trial that he first called the police on April 5 when, it appears, he first called on March 23. Such prosecutorial inaction, he argues, runs counter to the holding in *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31

L.Ed.2d 104 (1971), that the state should not let false evidence go uncorrected.

In *Giglio*, the prosecution failed to correct a witness' statement that he had not been promised immunity when the prosecution had in fact promised it. *Id.* at 151–52, 92 S.Ct. at 764–65. Here, by contrast, Quinones later qualified his statement by saying that he had the date of his first phone call to the police mixed up or could not remember the exact date. When one views Quinones' testimony as a whole, there was no false testimony and therefore *Giglio* is inapposite.

■ Townsend asserts that the prosecutor misled the jury by telling it, in his closing argument, that Walker had received no preferential treatment in exchange for his testimony. Townsend points out that the fact that Walker was ultimately sentenced to a 10-year term under the Federal Youth Corrections Act[3] shows that Walker benefited substantially from his cooperation with the government. Imposition of that sentence does not, of itself, establish that Walker had been promised preferential treatment by the government. As there is no evidence in the record that before Walker testified the government had agreed to urge the court that Walker be sentenced under the Federal Youth Corrections Act, Townsend has failed to show that the prosecutor misled the jury in this regard. *See Cole v. United States*, 478 A.2d 277, 283 (D.C.1984) (appellant has burden of convincing appellate court that trial court erred); *Cobb v. Standard Drug*, 453 A.2d 110, 111 (D.C.1982) (same).

■ Townsend next argues that the prosecutor misled the jury when he stated that there is little difference between the maximum penalties for first and second-degree murder. As the punishment for first-degree murder is life imprisonment, D.C.

---

**2.** In accordance with our decision, we deny Townsend's Motion Requesting a Stay on the Speedy Trial Issue Pending a Hearing by the Superior Court pursuant to § 23–110. In considering the § 23–110 motion, the Superior

Court will be guided by this opinion insofar as it is applicable.

**3.** 18 U.S.C. § 5010, repealed Pub. L. 98–473 Title II § 218(a)(8) (Oct. 12, 1984).

Code § 22–2404(a), and the maximum sentence for second-degree murder is life imprisonment, *id.* at (c), we detect no error in this particular aspect of the prosecutor's statement.

More telling is Townsend's assertion that the prosecutor misled the jury by arguing that "Cash Walker didn't get anything except for not having to sit through the trial," and that Walker had "absolutely nothing to gain" from testifying. The government agreed to allow Walker to plead guilty to second-degree murder; Townsend argues that the fact that a person convicted of first-degree murder must serve 20 years before being eligible for parole, while there is no such mandatory minimum time for a person convicted of second-degree murder, establishes that Walker did indeed receive something of value when he was allowed to plead guilty to the lesser charge in exchange for his cooperation.

▆ Our review of the record shows that the prosecutor did indeed understate the benefit Walker received when he was permitted to plead guilty to second-degree murder pursuant to a plea bargain. Townsend's trial counsel, however, failed to object to the prosecutor's statement. Therefore, we apply the "plain error" standard of review, *i.e.*, to warrant reversal, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial. *Watts v. United States*, 362 A.2d 706, 709 (D.C.1976) (en banc).

▆ The prosecutor's statement did not rise to the level of plain error; here, the challenged conduct consisted simply of two statements in a lengthy closing statement, the statements did not go directly to the issue of guilt or innocence, and the trial court emphasized to the jury that it alone must determine the credibility of the witnesses. Moreover, the evidence against Townsend was overwhelming, including in particular an eyewitness account of the slaying and testimony that Townsend had admitted his participation. The error complained of here did not jeopardize the very fairness and integrity of the trial. *See id.*

### III

Townsend also claims as error the use of a statement taken by the police after Townsend had turned himself in and, through his attorney, had invoked his right to remain silent under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Townsend's family had made arrangements for Townsend to turn himself in once his father learned that the police were looking for him. One of the arrangements the family's lawyer made was that the arresting officer would not ask any questions beyond those necessary to complete PD 163, a prosecution report form. While completing this form after Townsend's arrest, a detective asked Townsend to name his friends and associates, one of the questions on PD 163. Townsend named Cash Walker. At trial, Townsend denied that Walker was a friend of his. The prosecutor impeached that statement by introducing testimony that Townsend had told the detective that Walker was his friend.

Townsend now asserts that the use of his statement to the police regarding his friends and associates was taken in violation of his Fifth Amendment rights as established by *Miranda*.

▆ Routine booking questions are not interrogations for *Miranda* purposes. *See United States v. Sims*, 719 F.2d 375, 378, 97 S.Ct. 1232, 51 L.Ed.2d 424 (11th Cir.1983) (questions about telephone number and address not interrogation), *compare Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977) (police through trickery elicited response later used to incriminate defendant). If we should assume, arguendo, that the detective's questions did constitute an interrogation and violated *Miranda*, appellant's statement could nevertheless be used for impeachment purposes, as they were here. *Harris v. New York*, 401 U.S. 222, 224–26, 91 S.Ct. 643, 645–46, 28 L.Ed.2d 1 (1971).

Townsend also asserts that his Sixth Amendment right to counsel was violated when the detective did not "scrupulously honor" his counsel's request that he not be interrogated in the absence of counsel. When a person requests that he be interrogated only in the presence of his attorney, that request must be honored scrupulously. *Michigan v. Mosely,* 423 U.S. 96, 104, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975). As we indicated above, we are satisfied that the detective was not interrogating Townsend; therefore, we see no violation of Townsend's Sixth Amendment rights. Furthermore, Townsend's attorney had agreed that the police could ask questions necessary to complete the PD 163. That is all the police did. By so limiting their questions, the police scrupulously honored the terms of the agreement they reached with Townsend's attorney. We perceive no violation of Townsend's Fifth or Sixth Amendment rights.

## IV

Townsend's final argument is that the trial court erred in denying the third of three new trial motions, this one made on grounds of newly discovered evidence and ineffective assistance of counsel. The trial judge denied the motion without holding an evidentiary hearing, stating that the proposed newly discovered evidence "does not begin to satisfy" the standard enunciated in *Heard v. United States,* 245 A.2d 125 (D.C.1968), and that Townsend's assertions that trial counsel was incompetent found no support in the record.

As appellant acknowledges, his argument concerning newly discovered evidence is based principally on a statement by a Ms. Anita Bealle, who lived in an apartment one floor below Gantt. As appellant also acknowledges, he never advanced in the trial court the argument based on Ms. Bealle's statement that he makes here. Accordingly, we deem that argument not properly before us, and do not address it. We readily affirm the trial judge's conclusion that the remaining items asserted to be newly discovered evidence do not satisfy the requirement of *Heard.*

Townsend's argument that trial counsel was ineffective must be evaluated under the standard set by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In that decision, the Supreme Court noted that the benchmark for judging claims of ineffectiveness is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Id.* at 686, 104 S.Ct. at 2064. To show that counsel's performance was so deficient as to give support to appellant's constitutional claim, the defendant must show that counsel's performance was so deficient that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.* at 687, 104 S.Ct. at 2064. In addition to deficient performance, the appellant must also show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. at 2068.

Applying these standards to the case at bar, it is apparent to us that Townsend's ineffectiveness claim must fail. Townsend's main contention regarding ineffectiveness, is that counsel failed to unearth Ms. Bealle's statement. Townsend further asserts that Ms. Bealle's statement supports his theory that Gantt was killed in a war between drug dealers. These arguments were not advanced in the motion from which he is appealing, but rather are developed for the first time on appeal, and, as we noted above, are not properly before us. Even if we were to reach them, we would find his contentions insufficient to establish that the entire trial cannot be relied on as having produced a just result, for counsel ably presented an alibi defense, which the jury declined to credit. In presenting that defense, and generally throughout the trial, counsel was functioning as "counsel" as contemplated by the Sixth Amendment. Moreover, Bealle's

statement does not indicate that Townsend was not present during the fatal encounter; even if one were to take Bealle's statement as indicating that there was a drug war, given Walker's testimony that placed Townsend at the scene when the assailants gained entry into their victim's apartment by a ruse, Townsend still could have been convicted of felony murder committed in the course of a burglary.

■ Having evaluated counsel's performance as instructed by *Strickland,* we are unpersuaded by Townsend's argument of ineffective assistance of counsel.[4]

*Remanded for vacation of attempted robbery conviction, but otherwise affirmed.*

4. Townsend's only remaining assertion is that the trial court committed reversible error by permitting the prosecutor to question witnesses concerning other crimes and bad acts allegedly committed by Townsend. Trial counsel, however, failed to object to the prosecutor's questions. When a claim is brought for the first time on appeal, the applicable standard of review is plain error. *Watts v. United States,* 362

A.2d 706, 709 (D.C.1976) (en banc). Our review of the questions now objected to shows that most of the questions were either proper cross-examination or were within one of the exceptions recognized in *Drew v. United States,* 118 U.S.App.D.C. 11, 15–16, 331 F.2d 85, 89–90 (1964); those few isolated questions not within the above categories fail to rise to the level of plain error.