**Teresa S. BUTTS, Appellant**

v.

**UNITED STATES, Appellee**

**No. 01–CF–836.**

District of Columbia Court of Appeals.

Argued Sept. 6, 2002.

Decided May 1, 2003.

---

Daniel J. McGuan, Rockville, MD, appointed by the court, for appellant. Peter H. Meyers, also appointed by the court, entered an appearance for appellant.*

Matthew P. Cohen, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney, John R. Fisher and Elizabeth Trosman, Assistant United States Attorneys, and James E. Boasberg, Assistant United States Attorney at the time the brief was filed, were on the brief, for appellee.

Before TERRY and RUIZ, Associate Judges, and NEBEKER, Senior Judge.

---

* Daniel McGuan, appellant's appointed counsel, died in December 2002 while this case was pending decision after oral argument. Peter Meyers was appointed thereafter to represent appellant in this appeal.

TERRY, Associate Judge:

Appellant was convicted of negligent homicide, in violation of D.C.Code § 40–713 (1998).[1] On appeal she contends (1) that the trial court abused its discretion in making two evidentiary rulings, (2) that the court gave improper jury instructions, (3) that the evidence was insufficient to support a conviction of negligent homicide, and (4) that the prosecutor misled the jury during his closing argument. We affirm.

I

On March 12, 2000, at approximately 12:45 a.m., appellant was driving southbound in the 1400 block of New Jersey Avenue, N.W., when her car struck and killed Lionel Tucker, a 56–year–old homeless man. She was traveling approximately twenty-five miles per hour in her 1998 Dodge Neon. Crystal Rodgers testified that she had an unobstructed view of the incident from a second floor window in her family home. Crystal,[2] who was at home that night styling a friend's hair, looked out the window at her friend's request to see if it was still raining. Coincidentally, she did so just as the accident was about to occur, and thus she saw appellant's car strike Mr. Tucker as he slowly walked, with the aid of a cane, across New Jersey Avenue.[3] Crystal's sister Benicia was in the next room. Crystal immediately informed her of the accident, and Benicia promptly went outside to assist Mr. Tucker. Benicia testified that she saw appellant alight from her car with a cellular phone to her ear, talking on the phone.

Officer Dana Robinson was the first to respond to the accident scene. She testified that when she arrived, Mr. Tucker was lying in the street, with his cane a short distance away. Although it was a dark and rainy night, the officer said, "we still had street lighting." As Officer Robinson tried to attend to the injured Mr. Tucker, appellant came forward and said to the officer, "I hit him. He came from out of nowhere." An ambulance arrived moments later and took Mr. Tucker to Howard University Hospital, where he was pronounced dead at approximately 1:38 a.m. The cause of death was determined to be a spinal fracture and torn spinal cord, injuries consistent with being thrown onto a windshield or pavement. In addition, his left leg sustained injuries indicating that he had been struck by an automobile in the back of that leg.

Other officers conducted an investigation at the accident scene. Lieutenant Bridget Sickon of the Metropolitan Police Department's Major Crash Unit, who performed a field sobriety test on appellant, testified that appellant had signs of impairment, including bloodshot eyes, a strong odor of alcohol, and a mildly affected walk. Lieutenant Sickon then performed a breath test, which showed that at 2:41 a.m. (almost two hours after the accident), when the test was conducted, appellant had a blood alcohol content (BAC) of .17 percent. Appellant also submitted a urine sample, which indicated a BAC of .19 percent. Both tests showed that appellant's BAC was well above the legal limit of .08

---

1. Recodified as D.C.Code § 50–2203.01 (2001).

2. Since there were two Rodgers sisters who testified, in this opinion we shall refer to them both by their first names.

3. According to Crystal, the street lights above the point of impact were "messed up" and would "go on and off." However, she could not recall whether the lights were on or off when the accident happened. There were other cars traveling in front of appellant's car in the same lane, but Crystal testified that there was a "large gap" separating them from appellant's car.

percent established by D.C.Code § 40–716(b)(1) (1998).[4]

Appellant was not arrested at the scene, but was permitted to leave pending further investigation. Several days later, after an arrest warrant was issued, she voluntarily surrendered.

## II

Appellant's theory of defense was that her failure to see Mr. Tucker was the result of poor visibility attributable to rainy conditions and a malfunctioning street light, and that there was therefore no causal link between her negligence and Mr. Tucker's death. Appellant now challenges two evidentiary rulings by the trial court that related to this issue of visibility.

### A. *The Repair Document*

■ The defense sought to demonstrate that a street light above the point of impact was not working on the night when appellant's car struck Mr. Tucker. To show this, defense counsel offered into evidence a document from the Department of Public Works which stated that the light was repaired on August 23, more than five months after the accident. This document, however, did not indicate when the complaint for repair was lodged, and defense counsel produced no other evidence that the complaint was made at a time closer to March 12. The trial court therefore excluded the repair document as irrelevant, explaining, "This complaint may have been lodged two days before the repair. How do we know that this complaint for repair that was done August 23 had anything to do with the condition of the lights back in March? ... [F]or this to be probative, it's got to relate back." Appellant now argues that this ruling was an abuse of discretion.

■ To be relevant, evidence must "tend[] to make the existence or nonexistence of a fact more or less probable than would be the case without that evidence." *Punch v. United States*, 377 A.2d 1353, 1358 (D.C.1977) (citation omitted), *cert. denied*, 435 U.S. 955, 98 S.Ct. 1586, 55 L.Ed.2d 806 (1978). The repair document did nothing more than to establish that the street light was malfunctioning five months after the accident. Because of the great length of time between the accident and the repair, with no way of knowing when the request for repair was made, the document could not support appellant's claim that the street light was out of order on the night of the accident. We hold accordingly that the trial court did not abuse its discretion in ruling that the repair document was not relevant. *See Harris v. United States*, 618 A.2d 140, 145 (D.C.1992) ("Evidence which is remote in time to the events involved may be of scant probative value"); *Collins v. United States*, 596 A.2d 489, 494 (D.C.1991) ("There comes a point ... at which such evidence becomes too attenuated to be of relevance; some temporal nexus between [the evidence] and the crime is required").

In any event, the jury had already heard other evidence that the street light was not working, including a defense expert's analysis of the crime scene photographs and Crystal Rodgers' testimony that the street lights were "messed up" and would "go on and off." Thus the court's decision to exclude the repair document could not possibly have created such prejudice to the defense that it constituted an abuse of discretion.

■ Appellant also asserts in her brief that the repair document should have been admitted because, "[in] a criminal case, due process and the right to compulsory

4. Recodified as D.C.Code § 50–2201.05(b)(1) (2001).

process entitle [a defendant] to present evidence ... even in contravention of ordinary rules of evidence." That is emphatically not the law. On the contrary, the Supreme Court has held that "the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers v. Mississippi,* 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *see also Roundtree v. United States,* 581 A.2d 315, 329 n. 34 (D.C.1990). Appellant's due process claim is entirely without legal support.

### B. *Expert Testimony*

■ David Plant was hired by the government to conduct a visibility study in order to determine the time it would take an unimpaired driver to perceive and react to a pedestrian under conditions similar to those on the night of the accident. At trial, Mr. Plant was accepted as an expert in the field of accident reconstruction and was allowed to testify, over defense counsel's objection, about the results of his study.

With the road closed to traffic, Mr. Plant placed a Dodge Neon in the left southbound lane of New Jersey Avenue at distances of 100, 150, 200, 250, and 300 feet north of the point of impact. For each distance, Mr. Plant placed a mannequin in Mr. Tucker's hypothesized corresponding position, based on a walking speed of one foot per second.[5] While seated in the driver's seat of the car, Mr. Plant took a series of photographs of the mannequin from each of the distances to assess pedestrian visibility.

Mr. Plant concluded that an unimpaired driver, under conditions similar to those on the night of the accident, could detect a

pedestrian from a distance of 300 feet, and that a car traveling twenty-five miles per hour on a wet road would require only forty-two feet to come to a stop. He further testified that a driver traveling twenty-five miles per hour on a wet road, with a perception-reaction time of four seconds (a "worst case scenario," the average time being between .75 and 1.5 seconds), would still require only 185 feet to perceive the pedestrian and stop the car. Nevertheless, at no time before striking Mr. Tucker did appellant's car brake, slow down, or swerve, thus indicating that appellant had completely failed to see him.

Defense counsel sought to bar Mr. Plant from testifying on the ground that the conditions under which he conducted his study differed so much from those on the night of March 12 that the experiment lacked any real probative value. Counsel pointed out that the mannequin used in the study was of a lighter complexion than Mr. Tucker, that there was no same-lane traffic factored into the experiment, and that the street light above the point of impact was lit during the experiment. The trial court overruled counsel's objection, holding that these dissimilarities were "fertile field for cross-examination" rather than grounds for exclusion of the testimony. We find no abuse of discretion and no legal error in this ruling.

■ For experimental evidence to be admissible, the conditions of the experiment must be "substantially similar to those of the alleged occurrence." *Taylor v. United States,* 661 A.2d 636, 643 (D.C. 1995) (quoting *Love v. State,* 457 P.2d 622, 628 (Alaska 1969)). Substantial similarity "does not require an identity of conditions but only that degree of similarity which will insure that the results of

---

**5.** This walking speed, while slower than that of the average person, was based on the fact

that Mr. Tucker walked with a limp and used a cane because of a previous leg injury.

the experiment are probative." *Love,* 457 P.2d at 627. "No event can be perfectly reenacted ... and dissimilarities that are neither material nor misleading do not bar admission of experimental evidence." *State v. Ritt,* 599 N.W.2d 802, 812 (Minn. 1999) (citation omitted). Furthermore, admissibility also turns on whether the dissimilarities, if any, can be "adjusted for or explained so that their effect on the results of the experiment can be understood by the jury." *Taylor,* 661 A.2d at 644 (citing *Love,* 457 P.2d at 628).

▮ "[The] determination of whether substantial differences exist may not always be capable of a mechanical solution .... Frequently common sense provides a good guide to whether a factor entering into an evidentiary determination is substantial or merely unimportant." *Love,* 457 P.2d at 628. Common sense tells us in this case that all substantial conditions from the night of the accident were adequately re-created during the visibility study, and that the dissimilarities cited by appellant were slight in comparison. The study was conducted at night, while it was raining, on a wet roadway, in the same model car as the one appellant was driving, traveling at the same speed as appellant, with a mannequin dressed in dark clothing. Moreover, the dissimilarities are of the type that could easily be, and in fact were, explained to the jury for it to consider when assessing the weight of the evidence.[6] Accordingly, we hold that the trial court did not abuse its discretion by allowing Mr. Plant to testify despite the existence of these relatively slight dissimilarities.

▮ Appellant also maintains that the trial court should have excluded Mr. Plant's testimony about standard braking distances because he was not qualified as an expert on such matters, and because he relied on standard braking data as a basis for his conclusions rather than conducting his own braking experiment. Because appellant raised this claim for the first time at oral argument, we need not consider it. *See Woodard v. United States,* 738 A.2d 254, 259 n. 10 (D.C.1999) (refusing to consider point raised for the first time at oral argument); *RDP Development Corp. v. Schwartz,* 657 A.2d 301, 304 n. 3 (D.C.1995) (same).[7] In any event, it was certainly acceptable for Mr. Plant to rely on standard braking data to form his expert opinion instead of conducting his own experi-

---

6. First, Mr. Plant acknowledged on cross-examination that same-lane traffic was not, but should have been, factored into his accident reconstruction, and that spray from other vehicles during the rain, which also was not considered as a factor, might affect visibility. Second, the trial court allowed appellant to call her own expert witness to offer his views as to how these differences affected the outcome of the study. Third, defense counsel addressed each of these dissimilarities during closing argument, and also focused on the question of whether the street light was working or not.

7. A distinction is often drawn between a claim and an argument in support of a claim, allowing the latter—but not the former—to be raised for the first time in an oral argument on appeal. *See Technical Land, Inc. v. Fire-men's Insurance Co.,* 756 A.2d 439, 448 (D.C. 2000). At oral argument appellant contended, in essence, that Mr. Plant's testimony about braking distances was beyond the limits of his expertise. However, both at trial and in her appellate brief, appellant cited the supposed dissimilarities only to challenge the relevancy of Mr. Plant's study. Because challenges to relevancy and expert qualification involve entirely different rules of evidence, we view them as separate claims rather than as different arguments in support of the same claim. *Cf. Yee v. City of Escondido,* 503 U.S. 519, 537, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992) (finding a regulatory taking claim to be related to, but ultimately separate from, a physical taking claim, and therefore refusing to consider it).

ment. *See Edwards v. United States,* 483 A.2d 682, 685 (D.C.1984) ("reports customarily relied upon by experts ... can lay the foundation for an expert's testimony").[8] Furthermore, "[w]hile the determination of what an expert is qualified to testify about is normally within the discretion of the trial judge, that determination is reversible only if it is a clear abuse of discretion." *Garrett v. Desa Industries, Inc.,* 705 F.2d 721, 724 (4th Cir.1983). Because expertise in accident reconstruction surely encompasses such matters as the braking distance of a car based on its rate of speed, we conclude that the trial court did not abuse its discretion in allowing Mr. Plant to testify.

### III

■ Appellant argues that the trial court erred in three respects in its instructions to the jury. The arguments she offers to us, however, were never made in the trial court, where any errors in the instructions could have been quickly corrected. "[A] failure to offer a timely objection to jury instructions inevitably triggers plain error review on direct appeal." *Allen v. United States,* 495 A.2d 1145, 1151–1152 (D.C.1985) (en banc). We find no error, plain or otherwise.

### A. *Degree of Negligence*

■ The trial court instructed the jury that the phrase "careless, reckless, or negligent manner" found in D.C.Code § 40–713 means "to operate the vehicle without the exercise of that degree of care that a person of ordinary prudence would exercise under the same or similar circumstances .... It is a failure to exercise ordinary care." Appellant contends that

negligent homicide requires proof of gross negligence, rather than ordinary negligence, in the operation of a motor vehicle. Relevant case law is to the contrary. In *Sanderson v. United States,* 125 A.2d 70 (D.C.1956), which was also an appeal from a negligent homicide conviction, this court declared that "[c]learly, the judge was justified in finding defendant negligent by *ordinary and usual standards of care.*" *Id.* at 74 (emphasis added). Furthermore, appellant's argument contradicts the definition of negligence routinely used in this jurisdiction. *See* STANDARDIZED CIVIL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 5–2 (2002 rev. ed.) (defining negligence as "the failure to exercise ordinary care," and defining ordinary care as the "attention or skill that a reasonable person would use under similar circumstances"). We hold accordingly, in light of *Sanderson,* that the applicable standard is ordinary negligence, not gross negligence.

Moreover, in the trial court, defense counsel not only failed to object, but actually agreed with the prosecutor during the conference on instructions that ordinary negligence was the proper standard of culpability. This court has repeatedly held that "a defendant may not take one position at trial and a contradictory position on appeal." *Brown v. United States,* 627 A.2d 499, 508 (D.C.1993) (citing cases). Thus, even if appellant's argument had any legal merit, *Brown* and the cases on which it is based would preclude us from considering it.

### B. *Proximate Causation*

■ Because this case involved possi-

---

**8.** Even if the trial court erred in this respect (and we believe it did not), such an error would have been harmless. Mr. Plant's testimony about braking distances was of little

importance to appellant at trial, since her defense was that Mr. Tucker was not visible in the rain and the darkness, not that she was unable to brake in time to avoid hitting him.

ble negligence by the victim,[9] appellant also challenges the trial court's instruction that appellant could be relieved from responsibility only if the jury found Mr. Tucker's negligence, if any, to be the *sole* cause, rather than *a* cause, of the accident.[10] Appellant maintains that contributory negligence should act as a complete bar to criminal responsibility as it does for civil liability.

■ Our cases define proximate cause as "that cause which, in natural and continual sequence, unbroken by any efficient intervening cause, produces the injury and without which the result would not have occurred." *Wagshal v. District of Columbia*, 216 A.2d 172, 175 (D.C.1966) (citation and internal quotation marks omitted). Proximate cause has two elements: a cause-in-fact element and a policy element. *See Lacy v. District of Columbia*, 424 A.2d 317, 320 (D.C.1980). To determine whether a negligent act or omission is the cause-in-fact of a person's injury, this court uses the "substantial factor" test set forth in the Restatement of Torts. *See, e.g., District of Columbia v. Carlson*, 793 A.2d 1285, 1288 (D.C.2002); *Lacy*, 424 A.2d at 321. In the Restatement, the term "substantial" is used to "denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable [persons] to regard it as a cause ...."

RESTATEMENT (SECOND) OF TORTS § 431, comment a (1965).

■ There is no legal requirement, however, that a defendant's negligence be the only substantial factor in bringing about the harm. In *Prezzi v. United States*, 62 A.2d 196 (D.C.1948), this court expressly rejected the same argument that appellant now makes. In *Prezzi*, a negligent homicide case like this one, we held not only that "appellant is not relieved from responsibility because the negligence of another concurred in producing the result," but that acquittal was warranted only "if the negligence of the other driver was the *sole* cause of the death ...." *Id.* at 198 (footnote omitted; emphasis added). Because the trial court's instructions in this case were consistent with our holding in *Prezzi*, which after more than half a century is still good law, we reject appellant's argument.

### C. *Intervening Cause*

■ Appellant's third instructional argument is that the trial court committed reversible error by failing to instruct the jury to consider whether Mr. Tucker's contributory negligence was an "intervening cause" that would relieve appellant of responsibility. We hold that this would not have been a proper instruction.

---

9. The autopsy revealed that Mr. Tucker was intoxicated, with a BAC of .19 percent at the time of the accident. The evidence also showed that he attempted to cross the street approximately ninety feet from the nearest crosswalk.

10. The court instructed the jury as follows:
    If you find that the defendant's conduct was negligent and that this negligence was a proximate cause ... of the accident, then the defendant is not relieved from responsibility if you find also that Mr. Tucker was negligent and that his negligence also substantially contributed to the accident and his death.
    Defendant is relieved from responsibility only if you find that Mr. Tucker's negligence, if any, was *the sole cause* of the accident and his death. Now, this does not mean that you should give no consideration to the acts of Lionel Tucker. Those acts are to be considered by you so far as they shed light on the question of the defendant's negligence and whether her negligence was a cause of Mr. Tucker's death. [Emphasis added.]

The "policy" element of proximate cause includes "various factors which relieve a defendant of liability even when his actions were the cause-in-fact of the injury." *Carlson*, 793 A.2d at 1290. One of those "various factors" to be considered is whether there was an intervening cause. *See Morgan v. District of Columbia*, 449 A.2d 1102, 1111 (D.C.1982) (referring to intervening cause as "the critical policy issue in determining proximate cause"), *rev'd on other grounds on rehearing en banc*, 468 A.2d 1306 (D.C.1983). An intervening cause will be considered a superseding legal cause that exonerates the original actor if it was so unforeseeable that the actor's negligent conduct, though still a substantial causative factor, should not result in the actor's liability. *See* RESTATEMENT § 440.

The flaw in appellant's argument is its failure to recognize that "[a] superseding cause is an act of *a third person or other force* which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." RESTATEMENT § 440, at 465 (emphasis added). Thus the very definition of superseding cause requires that it be the act of someone or something other than the original actor and victim. Because Mr. Tucker was the victim of appellant's negligence, he cannot properly be labeled as a third party to the accident, and his conduct as a matter of law cannot be regarded as a superseding cause. Furthermore, for an act to be an intervening cause, it must be one which "actively operates in producing harm to another *after* the actor's negligent act or omission has been committed." RESTATEMENT § 441(1) (emphasis added). But Mr. Tucker's alleged negligence—*i.e.*, crossing the street ninety feet from the crosswalk, while intoxicated—occurred not after he was struck by appellant's car, but before or, at the very latest, concurrently with the moment at which appellant's negligence caused the accident and his fatal injury.

In short, Mr. Tucker's negligence does not meet the definition of an intervening or superseding cause; rather, it is more properly considered as a "contributing factor." *See* RESTATEMENT § 433, comment d. The trial court was therefore correct when it instructed the jury that Mr. Tucker's negligence, if any, was to be considered as part of the inquiry into whether appellant's negligence was a "substantial factor." *See* RESTATEMENT § 433(a) ("substantial factor" inquiry must take into account "the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it").

For all of these reasons, we find no instructional error.

IV

Appellant makes a twofold challenge to the sufficiency of the evidence. First, she contends that there was insufficient evidence of negligence, in that there was no proof of speeding or reckless driving. Second, she maintains that, even if she was negligent, the government did not prove a causal link between her negligence and Mr. Tucker's death.

When assessing claims of evidentiary insufficiency, "[w]e must view all the evidence in the light most favorable to the government, keeping in mind the jury's right to assess credibility and to draw reasonable inferences from the evidence it has heard." *Nelson v. United States*, 601 A.2d 582, 593 (D.C.1991) (citations omitted). "It is only where there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt that the trial court may

properly take the case from the jury." *Williams v. United States,* 357 A.2d 865, 867 (D.C.1976). Applying these basic principles, we reject both of appellant's arguments.

The absence of any proof of speeding or reckless driving in this case is of little significance because the evidence established other recognized types of negligent behavior. The government proved that appellant was driving while intoxicated with a BAC more than twice the legal limit, and a toxicology expert explained to the jury the effects that this level of intoxication would have on a person's vision and reaction time. The evidence also showed that appellant was talking on her cellular phone at, or very near, the time she struck Mr. Tucker.[11] This court has held that, although "talking on [a] car phone would not establish negligence as a matter of law, it is at least some evidence from which a jury could infer that [the driver] was not devoting his full time and attention to his driving, *i.e.,* that he was not exercising reasonable care under the circumstances." *King v. Pagliaro Brothers Stone Co.,* 703 A.2d 1232, 1235 (D.C.1997) (footnote omitted). Considering all of this evidence as we must in the light most favorable to the government, we hold that the jury could reasonably find, as it did, that appellant deviated from the ordinary standard of care.

The government also presented sufficient evidence to establish a causal relationship between appellant's negligence and Mr. Tucker's death. As we have already mentioned, the government's expert testified that Mr. Tucker should have been visible from a distance of 300 feet, yet appellant never saw him until the moment of impact. Given this evidence, the jury could reasonably conclude that appellant's complete failure to see an otherwise visible pedestrian was attributable to her intoxication and her failure to maintain a proper lookout while talking on her cell phone, and hence that her negligence proximately caused her to strike Mr. Tucker with her car.

## V

Appellant's last contention is that the prosecutor misled the jury during his closing argument when he referred to a police officer's testimony that the street lights were functioning properly upon the officer's arrival,[12] without also mentioning that the officer arrived on the scene more than an hour after the accident, and that a witness testified that the lights were "messed up" and would "go on and off." Normally, when reviewing such allegations of improper argument, this court must determine whether the prosecutor's statements actually were improper and, if so, whether the verdict was substantially swayed by the impropriety. *See, e.g., Harris v. United States,* 602 A.2d 154, 159 (D.C.1992) (en banc). In this instance, however, defense counsel made no objection at trial to the prosecutor's statement, so "we may not reverse unless the court's failure to intervene *sua sponte* and take corrective measures amounted to plain error." *McGrier v. United States,* 597 A.2d 36, 48 (D.C.1991) (citation omitted). Be-

---

11. Appellant's cell phone records showed that, at 12:45:09 a.m., a call was placed to "411" that lasted one minute and nine seconds, until 12:46:18 a.m. At 12:46:51 a.m., thirty-three seconds after the call to "411" ended, appellant called "911"on her cell phone.

12. The challenged remark was, "So are you going to believe this [referring to a photograph upon which the defense expert based his opinion that the street light was not working], or are you going to believe Officer Lancaster, who was there and told you the street light was on?"

cause we conclude that the prosecutor's rhetorical question during closing argument was proper, we reject appellant's claim of error.

It is settled beyond dispute that a prosecutor "may prosecute with earnestness and vigor—indeed, he should do so." *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). There are, of course, limitations on such vigor. The prosecutor may not refer to evidence not in the record, *see McGrier*, 597 A.2d at 49, make comments intended to inflame the jury, *see Nelson*, 601 A.2d at 598, or make statements designed to mislead the jury, *see Townsend v. United States*, 512 A.2d 994, 1000 (D.C.1986). The prosecutor in this case engaged in none of these improprieties, but merely posed to the jury a rhetorical question that made reference to testimony it had already heard. There is no requirement, as appellant seems to believe, that a prosecutor simultaneously remind the jury of evidence that may point the other way when asking the jury to return a guilty verdict. *See State v. Schwartz*, 266 Minn. 104, 110, 122 N.W.2d 769, 773 (1963) (a prosecutor " 'is not bound to make his argument to the jury colorless, or argue both sides of the case, if the defendant is represented by counsel' " (citation omitted)). If such a reminder is called for, defense counsel can and should provide it; that is not the prosecutor's job. The trial court in this case had no reason to take any corrective measures *sua sponte*, for there was nothing to correct. *See, e.g., Irick v. United States*, 565 A.2d 26, 33 (D.C.1989).

## VI

Appellant's conviction is therefore *Affirmed.*