DISTRICT OF COLUMBIA, Appellant,

v.

Gilman R. CARLSON, Jr.,
et ux., Appellees.

No. 01–CV–24.

District of Columbia Court of Appeals.

Argued Oct. 11, 2001.
Decided March 21, 2002.

James C. McKay, Jr., Assistant Corporation Counsel, with whom Robert R. Rigsby, Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for appellant.

Jacob A. Stein, with whom Richard A. Bussey, Washington, DC, was on the brief, for appellees.

Before TERRY, FARRELL, and GLICKMAN, Associate Judges.

TERRY, Associate Judge:

A car driven by Alfred Poe struck and injured a pedestrian, Gilman Carlson, at the intersection of Sixth Street and Independence Avenue, Southwest, directly in front of the National Air and Space Museum. At the time of the accident, the traffic signals at the intersection were not operating. A jury found that the District of Columbia was negligent in failing either to maintain the signal or to provide alternative traffic control devices, and that its negligence was a proximate cause of the accident. The District appeals, arguing that the non-functioning traffic signal was not a cause-in-fact of the accident, and that, even if it was, the actions of Mr. Poe were an unforeseeable superseding cause that relieves the District of any liability. We affirm.

## I

On the morning of July 13, 1995, an employee of D & F Construction Company ("D & F") cut an electric utility line with a backhoe while replacing a storm drainpipe at Madison Drive and Ninth Street, Northwest, a few blocks away from the site of the accident. The line was owned by Potomac Electric Power Company ("Pepco"). Byers Engineering Company ("Byers") had been responsible for marking the location of utility lines so that a contractor doing work would not interfere with those lines, but on that day there were no markings at the worksite. As a result of the damage to the power line, many of the traffic lights in the vicinity, including the light at Sixth Street and Independence Avenue, lost electricity and ceased to function. The District responded to several reports of non-functioning traffic lights, one of which was at Seventh Street and Independence Avenue, but it did not respond to, or repair, the traffic light at Sixth Street until after the accident that gave rise to this case.

At around 4:45 p.m., Alfred Poe was driving east on Independence Avenue in the far left lane. The weather was clear and sunny. Mr. Poe stopped for a red traffic light at Seventh Street with no car

ahead of him. When the light changed, however, a black car pulled into his lane from the right, directly in front of him. Mr. Poe traveled about five to ten feet behind the black car at about thirty miles per hour for approximately ten seconds, from Seventh Street to Sixth Street, before he applied his brakes. Unaware that he was near an intersection, Mr. Poe swerved to avoid hitting the black car, and as he did so, he looked in the rear view mirror to see if there was another car behind him. When he turned his attention back to the road, Mr. Carlson, who was crossing the street in the crosswalk at the intersection, was immediately in front of his car, and Mr. Poe could not avoid hitting him. Mr. Carlson was severely injured. He and his wife sued Mr. Poe, the District, Byers, D & F, Pepco, and United Services Automobile Association, Mr. Carlson's underinsured motorist insurance carrier. Each defendant filed cross-claims against some or all of the other defendants.

At trial, Mr. Carlson maintained that the District was negligent in failing either to repair the traffic light or to place alternative traffic control devices, such as cones or a portable stop sign, at the intersection. He presented the testimony of John Callow, an expert on the subject of traffic engineering. Mr. Callow testified that the volume of traffic at Sixth Street and Independence Avenue required operational traffic control signals and that the absence of a signal "increases the probability of conflicts."[1] Mr. Callow also testified that, according to national standards,

the District should have placed cones or a portable stop sign at the intersection, or assigned a police officer there to direct traffic, if it was aware of a problem with the traffic light.

The District did not dispute Mr. Callow's testimony, but asserted that the inoperative status of the traffic light was not a cause of the accident. The District relied on the testimony of Mr. Poe, both in his deposition and in court, that he could not see the traffic signals at Sixth Street. Mr. Poe stated that his view of the traffic signals, which were located on poles on either side of the street, was obstructed by the black car in front of him. Because he was so focused on the black car, he said, he did not notice the non-functioning traffic light.

At the close of all the evidence, the District moved for judgment as a matter of law, but the court reserved ruling on the motion. The jury then returned a verdict for the Carlsons, finding that both Mr. Poe and the District were negligent and that their negligent actions were proximate causes of the accident.[2] After the verdict, the District moved again for judgment as a matter of law or, in the alternative, for a new trial. The court denied the motion in a written order, stating, "[T]here was clearly evidence in the record from which jurors could logically conclude that, despite the earlier occurrences which were not District-caused, the negligence of the District, after notice was given of the traffic signal outage, was a substantial factor in plaintiff's injuries."

1. Although on cross-examination Mr. Callow said that conflicts are not accidents, he stated that conflicts "have the potential ... of causing accidents."

2. The jury also found that Byers was negligent but that its negligence was not a proximate cause of the accident; that the driver of

the unidentified car was not negligent; that D & F was not negligent; and that Mr. Carlson was not contributorily negligent and did not assume any risk. The court had earlier granted Pepco's motion for judgment because the Carlsons had failed to present expert testimony to support their claim against Pepco.

Final judgment was then entered in favor of the Carlsons against Poe and the District, and in favor of D & F and Byers on the Carlsons' claims against them. From that judgment, which also resolved all the cross-claims, only the District appeals.

## II

■ Questions of proximate cause are usually questions of fact. In particular:

Automobile collisions at street intersections nearly always present questions of fact. The credibility of witnesses must be passed on, conflicting testimony must be weighed, and inferences must be drawn. From this conflict and uncertainty the trier of facts, whether judge or jury, must determine the ultimate facts of the case. Only in exceptional cases will questions of negligence, contributory negligence, and proximate cause pass from the realm of fact to one of law.

*Shu v. Basinger*, 57 A.2d 295, 295–296 (D.C.1948); *accord, e.g., Washington Metropolitan Area Transit Authority v. Jones*, 443 A.2d 45, 50 (D.C.1982) (en banc) ("It is only in a case where the facts are undisputed and, considering every legitimate inference, only one conclusion may be drawn, that the trial court may rule as a matter of law on ... proximate cause" (citations omitted)).

■ Proximate cause has two components: "cause-in-fact" and a "policy element" which limits a defendant's liability when the chain of events leading to the plaintiff's injury is unforeseeable or "highly extraordinary in retrospect." *Lacy v. District of Columbia*, 424 A.2d 317, 320–321 (D.C.1980) (citation omitted). The District argues that the trial court should have granted judgment in its favor because the Carlsons failed to prove either cause-in-fact or foreseeability. We disagree.

### A. Cause-in-fact

■ This court has adopted the "substantial factor" test set out in the Restatement of Torts for determining whether a negligent act or omission is the cause-in-fact of a plaintiff's injury. *Lacy*, 424 A.2d at 321; *see Graham v. Roberts*, 142 U.S.App. D.C. 305, 308 n. 3, 441 F.2d 995, 998 n. 3 (1970). The Restatement says that "[t]he actor's negligent conduct is a legal cause of harm to another if ... his conduct is a substantial factor in bringing about the harm...." RESTATEMENT (SECOND) OF TORTS § 431 (1965).

The District argues that the evidence at trial showed conclusively that the non-functioning traffic light was not a "substantial factor" in the accident because Mr. Poe would have hit Mr. Carlson even if the light had been functioning or alternative traffic control devices had been present. Because Mr. Poe's view was obstructed by the black car, says the District, his attention was focused on that car, and he was looking in the rear view mirror for several seconds as he swerved into the next lane (where he struck Mr. Carlson) to avoid the black car.

Mr. Poe's testimony, however, was inconsistent on the question of whether his view was obstructed. Although Mr. Poe testified unequivocally in his deposition, which was read to the jury, that the black car obstructed his view of the traffic signals, what he said in his deposition was undermined by his testimony in the courtroom. First, he stated in court that his view of the road was not obstructed when he stopped at the previous traffic light at Seventh Street. Thus it is possible—*i.e.*, the jury could reasonably have found—that Mr. Poe would have seen a functioning traffic light or an alternative control

device (a portable stop sign or orange cones in the road, for example) at Sixth Street, as he was traveling from Seventh to Sixth, if such a device had been present. Second, on cross-examination by counsel for Byers, Mr. Poe said that his view was not completely obstructed, and he admitted that there was nothing to obstruct his view of Mr. Carlson as he was crossing the street. Finally, on cross-examination by Carlson's counsel, Mr. Poe initially said (contrary to his deposition) that the black car did not physically obstruct his view of the traffic lights. After an objection to the form of the question, Mr. Poe answered again, but reversed himself and stated that his view was obstructed. The pertinent testimony was as follows:

Q. The car that was traveling in front of you was directly in front of you in your lane?

A. Yes.

Q. So, that car in front of you in your lane didn't physically block your ability to see the traffic lights on Independence Avenue, had they been lit?

A. Yes.

MR. KING [counsel for Byers]: Objection.

THE COURT: Basis?

MR. KING: Double-barreled question.

THE COURT: Please break it down, Mr. Bussey [counsel for Carlson], in terms of the compound nature of it.

Q. The car that was traveling in front of you as you proceeded down Independence Avenue did not interfere—did not actually physically block your ability to see the traffic lights where they were located at the intersection?

A. To me they did, yes.

Q. These lights are to your right as you are coming down, or to your left, correct?

A. Yes.

Q. They are not directly in front of you?

A. Yes, that's true.

Q. All right. As you indicated earlier in response to a question of one of the other attorneys, there was nothing interfering with your ability to look to the right?

A. There was. The car in front of me was—

[Interruption by the court] [3]

In light of these contradictions, the jury could reasonably find that Mr. Poe either could or could not have seen the traffic light from his position behind the black car. This was a matter for the jury to decide.

The closer question is whether Mr. Poe's attention was so closely focused on the car in front of him that he would not have seen the light even if it had been working. Although it is clear that Mr. Poe did not actually see the traffic light, Mr. Carlson argues that the jury could find that Mr. Poe would have seen it if it were functioning because just a few seconds earlier he saw and obeyed a functioning traffic light at Seventh Street. We agree that a jury could reasonably infer, from all the evidence, that a driver in Poe's position would normally see and obey a traffic signal if it were operating properly even if the driver were closely following another vehicle. Because cause-in-fact is a factual determination, *see Shu*, 57 A.2d at 295–296, and because there was more than one possible

---

**3.** After the interruption, the questioning turned to other matters. A few moments later, Mr. Carlson was asked whether he had seen "any red traffic signal, yellow traffic signal, or green traffic signal facing you on either of the light poles that you described," to which he answered, "No." He was not asked whether he *could have seen* such traffic lights.

conclusion that the jury could draw from the evidence, *see Jones,* 443 A.2d at 50, the trial court did not err in denying the District's motion on this ground.

### B. *Foreseeability*

■■■■ The "policy element" of proximate cause includes various factors which relieve a defendant of liability even when his actions were the cause-in-fact of the injury. We have held that a defendant "may not be held liable for harm actually caused where the chain of events leading to the injury appears 'highly extraordinary in retrospect.' " *Morgan v. District of Columbia,* 468 A.2d 1306, 1318 (D.C.1983) (en banc) (citing *Lacy,* 424 A.2d at 320–321). Although the intervening act of another makes the causal connection between the defendant's negligence and the plaintiff's injury more attenuated, such an act does not by itself make the injury unforeseeable. "[A] defendant will be responsible for the damages which result, despite the intervention of another's act in the chain of causation, '[i]f the danger of an intervening negligent or criminal act should have been reasonably anticipated and protected against.' " *Lacy,* 424 A.2d at 323 (citation omitted); *see* RESTATEMENT (SECOND) OF TORTS §§ 302A, 302B (1965). If the intervening act is criminal, however, "the law requires that the foreseeability of the risk be more precisely shown." *Id.; see McKe-*

*thean v. Washington Metropolitan Area Transit Authority,* 588 A.2d 708, 716–717 (D.C.1991) ("When an intervening act is criminal, this court demands a more heightened showing of foreseeability than if it were merely negligent. . . . The defendant will be liable only if the criminal act is so foreseeable that a duty arises to guard against it."); RESTATEMENT (SECOND) OF TORTS § 448 (1965).

The District presents two arguments in support of its assertion that Mr. Poe's actions were unforeseeable. First, the District stresses that Mr. Poe's conduct constituted a criminal act, in that he violated D.C.Code § 40–726 (1998), which deals with "Right-of-way at crosswalks,"[4] when he struck Mr. Carlson in the crosswalk. We hold that even though Mr. Poe's actions violated a criminal statute, Mr. Carlson met his heightened burden of showing that Mr. Poe's actions were foreseeable in light of the District's negligence. First, Mr. Callow's expert testimony established that the lack of a traffic control device at the Sixth Street intersection would increase the risk of traffic accidents. Second, the fact that the District did not respond to the inoperative light for almost eight hours made it highly foreseeable that a negligent driver might strike a pedestrian crossing the street during that time.[5]

---

4. Section 40–726(a) reads:

   When official traffic-control signals are not in place or not in operation, the driver of a vehicle shall yield the right-of-way to a pedestrian crossing the roadway within any marked crosswalk or unmarked crosswalk at an intersection.

   A driver who fails to yield to a pedestrian in a crosswalk is subject to a fine of not more than $500 or imprisonment for not more than thirty days. D.C.Code § 40–726(c).

   Section 40–726 has recently been recodified as D.C.Code § 50–2201.28 (2001), but the statutory language was not changed in the recodification.

5. Mr. Carlson was required to show that Mr. Poe's particular conduct was foreseeable, but he did not have to prove that the District could anticipate the precise injury or the particular method through which the harm would occur. *See Lacy,* 424 A.2d at 323. On the facts in this case, we think the jury could find it reasonably foreseeable (1) that there would be a negligent driver on Independence Avenue, a busy thoroughfare, during the eight-hour period when the traffic light was not working, and (2) that such a driver would be more likely to cause injury to a pedestrian in a crosswalk when no traffic control device, permanent or temporary, was present.

Finally, Mr. Poe's negligent driving was not an intentional act, and thus it was more foreseeable than if it had been.[6]

· The District's second argument is that this case is controlled by our prior decision in *District of Columbia v. Freeman*, 477 · A.2d 713 (D.C.1984). In *Freeman* an automobile struck a child walking across the street in a crosswalk. A warning sign, which was normally present, was missing. We held that the District was not liable because as a matter of law the absence of the warning sign was not a proximate cause of the accident. *Id.* at 715.

■ *Freeman* is not applicable to this case. First, the court in *Freeman* did not reach the issue of foreseeability. *See Freeman*, 477 A.2d at 716 n. 10 ("we express no opinion as to whether [plaintiff's] injuries were a foreseeable consequence of the sign's absence"). Second, proximate cause, including the foreseeability component, is "nearly always" a question of fact for the jury, *Shu*, 57 A.2d at 295, and the facts of *Freeman* are different from the facts of this case. In *Freeman* we concluded that the "evidence, viewed in its most favorable light, simply could not allow the jury to conclude reasonably that the warning sign's absence played a central role in the incident." *Freeman*, 477 A.2d at 716 (footnote omitted). The reason for that conclusion was that "the missing sign had no independent legal significance [and] did not control traffic." *Id.* at 717. In this case, by contrast, the inoperative traffic light had "legal significance" because, if it had been working properly, it "would have placed approaching motorists under a legal duty to stop at the intersection," *id.*, and it did control traffic. Further, in *Freeman* the driver was aware that he was approaching an intersection

because of the presence of an already stopped car. Mr. Poe, by contrast, was unaware that he was close to an intersection. On these facts a reasonable jury could find that a functioning traffic light, or even a temporary stop sign or a police officer, would have alerted Mr. Poe to the intersection and to the attendant duty to modify his driving accordingly.

We agree with Mr. Carlson that this case is more akin to *Wagshal v. District of Columbia*, 216 A.2d 172 (D.C.1966). In *Wagshal* an accident occurred at an intersection where a stop sign that normally controlled traffic was missing. We held that "[a] jury could reasonably find from the evidence presented in this case that a collision was the natural and probable consequence of the failure to repair the stop sign." *Id.* at 175; *see Johnson v. Strouse*, 697 F.Supp. 535, 539 (D.D.C.1988). Similarly, in this case, a jury could reasonably conclude that the accident was a foreseeable consequence of the District's failure to repair the non-functioning traffic light, or at least to replace it temporarily with an adequate substitute.

■ The District argues that *Freeman* is dispositive here because a crosswalk was involved in both cases. Even though the traffic light was out, the District maintains, the crosswalk established a duty to stop. While it is true that the crosswalk established a duty to stop, *see Freeman*, 477 A.2d at 717, the relevant issue was whether a breach of that duty was foreseeable in the absence of a traffic control device at the Sixth Street intersection. Under *Wagshal*, the District is not liable for a decision not to install a traffic control device at an intersection, but once it does so, it may be liable if it fails to maintain that device.

---

**6.** The District argues that Mr. Poe's actions constituted "road rage" and were reckless. There is no basis in the evidence for the claim of "road rage," and in our view a jury could conclude from all the testimony that his driving was merely negligent, not reckless.

*Wagshal,* 216 A.2d at 174; *accord, Johnson,* 697 F.Supp. at 538. In this case the District determined that, in addition to the crosswalk, a traffic light with a pedestrian signal was necessary, a decision that it did not make in *Freeman.* This determination itself was evidence from which a jury could infer that an accident in the absence of such a signal was foreseeable. Mr. Callow's testimony about the need for traffic signals at that intersection was additional evidence supporting such an inference.

### III

We hold that there was sufficient evidence for the jury to find that the District's failure to provide adequate traffic control measures when the traffic light was not functioning was a substantial factor in causing Mr. Carlson to be struck and injured by a car. We also hold that there was sufficient evidence for the jury to determine that the accident was a foreseeable consequence of the absence of any traffic control devices. The judgment is therefore

*Affirmed.*