Edward Dwayne ASHFORD, Plaintiff,

v.

DISTRICT OF COLUMBIA,
et al., Defendants.

No. CIV.A. 02–1955(RMC).

United States District Court,
District of Columbia.

Feb. 26, 2004.

Edward Dwayne Ashford, pro se, Coalinga, CA, for Plaintiff.

Elizabeth C. Burke, Michael P. Bruckheim, Office of the Corporation Counsel, for Defendants.

## MEMORANDUM OPINION

COLLYER, District Judge.

Edward Ashford, a *pro se* plaintiff, is presently incarcerated at Pleasant Valley State Prison in Coalinga, California, where he is serving a lengthy sentence for crimes committed in the District of Columbia. Mr. Ashford was arrested, jailed, and tried in D.C. in 1985–86 prior to his transfer to various State prisons and transfer to the care of the Federal Bureau of Prisons ("BOP"). This lawsuit alleges that the District and two employees of the D.C. Department of Corrections are liable to Mr. Ashford for injuries resulting from an attack on him by other D.C. inmates at the United States Penitentiary in Beaumont, Texas ("USP Beaumont"), in 2001.

On April 8, 2003, the District of Columbia filed a motion to dismiss, which Mr. Ashford opposes.[1] A little over two months later, Mr. Ashford filed a motion for partial summary judgment on the issue of liability. The District opposes this motion. Having carefully considered the complaint, as amended, the parties' briefs, and the entire record, the Court will grant in part and deny in part the motion to

---

1. The District of Columbia informs the Court that it has not received any requests for representation from Defendants Patricia Britton or Donald Mathews. The District also states that it does not believe these defendants have been properly served. The docket shows that service was not effected on Mr. Mathews because he was no longer an employee of the D.C. Department of Corrections when service was attempted and no other address was available. The Court ordered Mr. Ashford to provide a different address but he failed to respond to that order. Therefore, the claims against Mr. Mathews are dismissed without prejudice. As to Ms. Britton, the court docket shows that she was properly served *and* that Assistant Corporation Counsel Elizabeth C. Burke filed Defendants' Waiver of Reply on her behalf as well as the city's on March 13, 2003. The Court concludes that the Corporation Counsel represents both D.C. and Ms. Britton in this matter and that the Court is free to rule on the pending motions as to both remaining defendants.

dismiss and deny the motion for partial summary judgment.

## I. Background

On October 21, 1985, Mr. Ashford was a pretrial detainee in the custody of the D.C. Department of Corrections. He was being held in protective custody in the D.C. Jail because his father worked there as Officer–in–Charge of the SW–1 housing unit, which housed inmate Kelvin "Hollywood" Smith. *See* Am. Compl. ¶¶ 4–6. Nonetheless, Mr. Ashford asserts that he was not kept separate from Mr. Smith and that he was attacked by Mr. Smith and other inmates on a "court bus" *en route* from D.C. Superior Court to the D.C. Jail. *Id.* ¶ 5. Mr. Smith later got into a "physical altercation" with the Mr. Ashford's father and vowed to "get even[.]" *Id.* ¶ 6. As a result, a second separation order was issued ("Separation Order") and made a permanent part of Mr. Ashford's file. *Id.* ¶¶ 6–7. The exact cause of the hostility between Messrs. Ashford and Smith is not stated in the amended complaint.

In August 1997, Mr. Ashford was transferred to the care of the BOP. He eventually wound up at the United States Penitentiary in Terre Haute, Indiana, in 1998. Apparently, Mr. Smith was also placed at that facility and was "attempting to rally other D.C. Offenders to attack plaintiff[.]" *Id.* ¶ 12. Mr. Ashford claims to have notified his correctional counselor of this threat, but nothing happened.

On November 14, 2001, Mr. Ashford was transferred to USP Beaumont from the Federal Correctional Complex at Beaumont. *Id.* ¶ 14. Unbeknownst to Mr. Ashford, Mr. Smith was already at USP Beaumont. *Id.* On November 16, 2001, as Mr. Ashford exited the prison commissary, he was approached by D.C. inmates Kobi Mowatt and Mark Bundy, who allegedly attacked him with homemade knives after stating, " '[Y]our [*sic*] about to get paid,

Hollywood (Smith's nickname) sent us[.]' " *Id.* ¶ 15. Mr. Ashford was stabbed 13 times, requiring a three-week hospitalization to recover from his injuries. Some of his wounds appear to be permanent and may require additional medical treatment. *Id.* ¶¶ 15, 16.

## II. Legal Standards

A motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. The Court must accept as true all of the plaintiff's well-pled factual allegations and draw all reasonable inferences in favor of the plaintiff; however, the Court does not need to accept as true any of the plaintiff's legal conclusions. *See Alexis v. District of Columbia,* 44 F.Supp.2d 331, 336–37 (D.D.C. 1999). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). This procedural device is not a "disfavored legal shortcut" but a reasoned and careful way to resolve cases fairly and expeditiously. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether a genuine issue of material fact exists, the Court must view all facts and reasonable inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Tao v. Freeh,*

27 F.3d 635, 638 (D.C.Cir.1994). To be "material" and "genuine," a factual dispute must be capable of affecting the substantive outcome of the case. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505; *Laningham v. United States Navy,* 813 F.2d 1236, 1242–43 (D.C.Cir.1987).

## III. Analysis

The amended complaint sets forth two causes of action: (1) a claim under 42 U.S.C. § 1983 alleging violations of the Eighth and Fourteenth Amendments to the U.S. Constitution, and (2) a common law negligence claim. Mr. Ashford asserts that the District and its "Interstate Compacts Administrators," Ms. Britton and Mr. Mathews, had a duty to relay any information about threats to the personal safety of inmates who were transferred elsewhere to serve their sentences.[2] *See* Compl. ¶ 17. He also contends that the failure of the D.C. Department of Corrections to notify receiving institutions that there was a permanent separation order in his file resulted from "a local Municipal custom, policy and practice . . . to effect the objectives of the District . . . to effect the transfers of inmates outside the ambit of the D.C. Department of Corrections" who otherwise would not have been accepted by a State prison system or the BOP. *Id.* ¶ 18. This local custom, policy and practice was allegedly "based on negligence and recklessness pursuant to an official policy of the District of Columbia." *Id.* ¶ 19.

### A. Section 1983

The District of Columbia argues for dismissal of the § 1983 claim on the grounds that Mr. Ashford "cannot prove the actions attributed to Defendants were a custom or policy of the District to violate plaintiff's constitutional rights . . . [and that] plaintiff has no constitutional right to be segregated." Def.'s Mot. to Dismiss at 4. Basically, the District asserts that any cognizable claim by Mr. Ashford—if one exists—lies only in common law negligence, not the U.S. Constitution. *See Daniels v. Williams,* 474 U.S. 327, 328, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) ("[T]he Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property.") (emphasis in original); *Davidson v. Cannon,* 474 U.S. 344, 347, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986) ("[W]here a government official is merely negligent in causing injury, no procedure for compensation is constitutionally required.").

Section 1983 provides:

Every person who, under color of [state law] subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. A municipality, such as the District of Columbia, may be held liable under § 1983 "only when the execution of its official policy or custom is responsible for the deprivation of constitutional rights." *Morgan v. District of Columbia,* 824 F.2d 1049, 1058 (D.C.Cir.1987); *see also Daskalea v. District of Columbia,* 227 F.3d 433, 441 (D.C.Cir.2000). Courts

---

**2.** According to Mr. Ashford, an "Interstate Compacts Administrator"

was . . . responsible for the screening, selection, classification and custody determination of those inmates housed within the ambit of the D.C. Department of Corrections whom [*sic*] were to be transferred

pursuant to contractual agreements, as well as the Interstate Corrections Compact provisions, to State, Private, and Federal Correctional entities for service of their District of Columbia sentences.

*Id.* ¶ 9.

"have consistently refused to hold municipalities liable under a theory of *respondeat superior.*" *Bd. of County Comm'rs v. Brown,* 520 U.S. 397, 403–04, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) ("Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality."); *see also Triplett v. District of Columbia,* 108 F.3d 1450, 1453 (D.C.Cir.1997) ("Although *Monell* allows claims based upon a well-settled municipal custom ... plaintiff 'must show fault on the part of the city based on a course its policymakers consciously chose to pursue[.]' "). To prevail on a § 1983 claim against the District, therefore, Mr. Ashford "must show a course deliberately pursued by the city, 'as opposed to an action taken unilaterally by a nonpolicymaking municipal employee,' .... and 'an affirmative link between the [city's] policy and the particular constitutional violation alleged.' " *Carter v. District of Columbia,* 795 F.2d 116, 122 (D.C.Cir.1986) (quoting *Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)).

The District asserts that Mr. Ashford has "failed to allege any policy, practice or custom *followed or instituted by the District of Columbia* ...." Def.'s Mot. to Dismiss at 7 (emphasis added). It is clear from Mr. Ashford's opposition brief that he seeks to hold the District liable based on his belief that "defendants Britton and Matthews [sic] unconstitutionally promulgated policies and customs as decisionmakers during their respective tenures as Interstate Compacts Administrators." Pl.'s Opp. at 4. The District argues that neither of these individuals had final policymaking authority under D.C. law so that their

alleged conduct could not subject the municipality to § 1983 liability. Defense counsel's statement that Ms. Britton and Mr. Mathews "obviously had no policymaking authority" is insufficient to counter the complaint allegations, which, at this juncture, are presumed to be true. *See* Def.'s Reply at 3 n. 2. For purposes of withstanding a motion to dismiss, Mr. Ashford has adequately averred that "failures [of the defendants] ... to notify those [transferee] penal and correctional entities ... of those threats to the plaintiff's personal safety ... *was [sic] based on a local Municipal custom, policy and practice ... to* effect the transfers of inmates ...."[3] Am. Compl. ¶ 18 (emphasis added); *see also Atchinson v. District of Columbia,* 73 F.3d 418, 421–24 (D.C.Cir.1996) ("[A] complaint alleging municipal liability under section 1983 ... is to be judged not by the standards that would govern a decision on the merits, but by the liberal standard of Rule 8.").

■ The District of Columbia's next area of contention relates to causation. The District argues that "the Defendants did not act to *deprive* plaintiff of any constitutional rights." Def.'s Mot. to Dismiss at 9 (emphasis in original). According to the District, the alleged constitutional violations are "too far remote in time to hold Defendants responsible under 42 U.S.C. § 1983." *Id.* (citing *Martinez v. California,* 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980)). Because Mr. Ashford is a D.C. prisoner who was sent to serve his sentence in other prisons pursuant to agreements with the District, and because D.C. knew that he faced a specific danger from Mr. Smith, this case is not necessarily answered by *Martinez,* where the passage of time and other factors made the

---

3. Mr. Ashford offers a plausible reason for this alleged policy: "making such notifications to those receiving entities would either

delay such transfers of inmates or result in such inmates not being accepted by the prospective receiving entity whatsoever." *Id.*

"decedent's death . . . too remote a consequence of the parole officers' action to hold them responsible under the federal civil rights law."[4] *Id.* at 285, 100 S.Ct. 553. Accepting the facts of the amended complaint as true and drawing all reasonable inferences in his favor, Mr. Ashford's injuries could be considered a foreseeable result of the alleged policy or custom of transferring inmates without also informing the transferee correctional institutions about active separation orders.

In addition, the fact that Mr. Ashford himself may have told federal prison officials about the separation orders does not necessarily vitiate the purported causal link between the alleged policy or custom and the attack on Mr. Ashford. An official separation order no doubt would receive more consideration and attention than a prisoner's complaint. Notwithstanding Mr. Ashford's own warning to federal authorities, a reasonable jury might find that the District's alleged policy or custom, if proven, was a "moving force" behind Mr. Ashford's alleged injuries. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

■ The District's third point on causation is that the failure to relay the separation orders did not bring about Mr. Ashford's injuries because the target of the separation orders, Mr. Smith, did not physically attack him. The District argues, the "Defendants [*sic*] alleged failure to notify USP Beaumont of the separation was not a substantial factor in bringing about the attack on plaintiff because even if there *was* an order of separation between plaintiff and Smith, it would not have done plaintiff any good because he was not attacked by Smith." Def.'s Reply at 8 (emphasis in original). On a motion to dismiss, the Court cannot rule on this ar-

gument. The complaint alleges that Mr. Smith incited other D.C. inmates against Mr. Ashford in Terre Haute. It may be that the presence of Mr. Smith and Mr. Ashford in the same prison population—which a separation order might have avoided—is the only causal connection needed.

■ Contrary to the District's assertion that Mr. Ashford alleges only negligent conduct, the amended complaint sets forth a factual predicate that his constitutional rights may have been violated, as well. "Although the state is not obligated to insure an assault-free environment, a prisoner has a constitutional right to be protected from the unreasonable threat of violence from his fellow inmates." *Morgan v. District of Columbia*, 824 F.2d 1049, 1057 (D.C.Cir.1987). In most instances, "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle v. Gamble*, 429 U.S. 97, 105, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). If, as Mr. Ashford claims, the District had a policy or custom of not reporting separation orders for the purpose of insuring that its prisoners would be accepted for transfer at other correctional institutions without problems or delay, then a reasonable jury might find that the municipality acted with deliberate indifference to the safety and well-being of its inmates. *See* Am. Compl. ¶¶ 18, 22. Unlike *Davidson v. Cannon*, 474 U.S. 344, 348, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986), Mr. Ashford does not merely aver that the District and its employees "mistakenly believed that the situation was not particularly serious . . . [or] simply forgot" about the separation orders.

---

4. In the context of a parole release, the Supreme Court recognized that there might be some circumstances in which a parole officer could "be deemed to 'deprive' someone of life by action taken in connection with the release of a prisoner on parole." *Id.*

■ As to Ms. Britton—the remaining individual defendant in this case—Mr. Ashford must show that she "kn[e]w of and disregard[ed] an excessive risk to [his] health or safety[.]" *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). For the reasons already discussed above, the § 1983 claim against Ms. Britton will not be dismissed at this stage of the litigation. The amended complaint alleges, in relevant part, that Ms. Britton acted with deliberate indifference toward Mr. Ashford's health and safety when she chose not to inform transferee prisons of the existence of the separation orders. Although Mr. Ashford will ultimately need to produce evidence in support of this claim, there is enough in the amended complaint for him to prevail on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### B. Common Law Negligence

■ The District of Columbia seeks to dismiss the common law negligence claim based on its belief that the "Defendants owed no legal duty to plaintiff." Def.'s Mot. to Dismiss at 13. According to the District, "[o]nce the BOP was informed of this separation order [by Mr. Ashford], the duty fell upon the BOP to separate plaintiff from Smith." *Id.* Assuming, without deciding, that any common law duty owed to Mr. Ashford shifted from D.C. to the BOP in 1998, when Mr. Ashford told the BOP about the separation orders, the District still could have breached its duty of care back in 1997 (or earlier), when Mr. Ashford was transferred to the BOP.[5] The issue here is whether the District was negligent in transferring Mr. Ashford without also relaying the separation orders—which negligence then allegedly

"caused" Mr. Ashford's injuries, a separate issue—not whether the District had a duty to separate Mr. Ashford from Mr. Smith at the time of the alleged attack.

■ The District also argues that the alleged policy or custom of not informing transferee correctional institutions of the existence of separation orders was not the proximate cause of Mr. Ashford's injuries.

To determine whether a negligent act or omission is the cause-in-fact of a person's injury, [D.C. courts use] the "substantial factor" test set forth in the Restatement of Torts. *See, e.g., District of Columbia v. Carlson,* 793 A.2d 1285, 1288 (D.C.2002); *Lacy,* 424 A.2d at 321. In the Restatement, the term "substantial" is used to "denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable [persons] to regard it as a cause . . . ." RESTATEMENT (SECOND) OF TORTS § 431, comment a (1965) . . . . There is no legal requirement, however, that a defendant's negligence be the only substantial factor in bringing about the harm.

*Butts v. United States,* 822 A.2d 407, 417 (D.C.2003) (criminal homicide case); *see also Majeska v. District of Columbia,* 812 A.2d 948, 951 (D.C.2002). Furthermore, "[a] defendant may not be held liable for harm actually caused where the chain of events leading to the injury appears 'highly extraordinary in retrospect.'" *Morgan v. District of Columbia,* 468 A.2d 1306, 1318 (D.C.1983). "Although the intervening act of another makes the causal connection between the defendant[s'] negligence and the plaintiff's injury more at-

---

**5.** The District of Columbia makes an additional argument that the defendants cannot be held liable under the public duty doctrine. Inasmuch as Mr. Ashford is a prisoner and unable either to defend himself or to relocate himself away from danger, the District might have such a special relationship with him as a matter of law that it would override the public duty doctrine.

tenuated, such an act does not by itself make the injury unforeseeable." *District of Columbia v. Carlson*, 793 A.2d 1285, 1290 (D.C.2002).

The earlier analysis on this issue for the § 1983 claim supports the same conclusion with respect to the claim for negligence. *See supra* pp. 13–15. Based solely on the allegations in the amended complaint—which the Court accepts as true in deciding this motion to dismiss for failure to state a claim—and without the aid of discovery, a reasonable jury might find that the District's and Ms. Britton's alleged negligence was a proximate cause of Mr. Ashford's injuries. *See Majeska*, 812 A.2d 948, 951 (D.C.2002) ("[T]he question should have been one for the jury.").

### C. Liability

A summary judgment motion should be "accompanied by a statement of material facts as to which the moving party contends there is no genuine issue." LCvR 7(h). Mr. Ashford's motion for partial summary judgment states his conclusions and not uncontested facts. At a minimum, there is a genuine and material dispute over whether an official policy or custom of failing to convey separation orders existed. For this reason, the motion for partial summary judgment will be denied.

### IV. Conclusion

The motion to dismiss will be GRANTED in part and DENIED in part. The amended complaint against Mr. Mathews will be DISMISSED without prejudice. The motion for partial summary judgment will be DENIED. A separate order accompanies this memorandum opinion.

### ORDER

For the reasons stated in the memorandum opinion that accompanies this order, it is hereby

ORDERED that the motion to dismiss is **GRANTED** in part and **DENIED** in part. It is

**FURTHER ORDERED** that the case against Donald Mathews is **DISMISSED** without prejudice. It is

**FURTHER ORDERED** that the motion for partial summary judgment is **DENIED**. It is

**FURTHER ORDERED** *sua sponte* that pursuant to Local Civil Rule 83.11, the Clerk is directed to appoint counsel from the Court's Civil Pro Bono Panel to represent plaintiff in further proceedings. Plaintiff has ten (10) days from his receipt of this order to object to this appointment. Otherwise, the proceedings are stayed pending the completion of the appointment process.

**SO ORDERED.**