*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 22-CV-0298

JOSEPH MANCUSO, *et al*, APPELLANTS,

v.

CHAPEL VALLEY LANDSCAPE COMPANY, *et al*., APPELLEES.

Appeal from the Superior Court of the
District of Columbia
(2018-CA-001840-B)

(Hon. Shana Frost Matini, Trial Judge)

(Argued December 13, 2022                    Decided July 18, 2024)

*Frederic W. Schwartz, Jr.* for appellant.

*James K. Howard*, with whom *Howard R. Meinster* and *Robert L. Ferguson* join on the brief, for appellee.

Before BLACKBURNE-RIGSBY, *Chief Judge*, and BECKWITH[*] and DEAHL, *Associate Judges*.

---

[*] Associate Judge AliKhan was originally assigned to this case. Following Judge AliKhan's appointment to the U.S. District Court for the District of Columbia, effective December 12, 2023, Associate Judge Beckwith has been assigned to take her place on the panel.

BLACKBURNE-RIGSBY, *Chief Judge*: This action arises out of the collapse of a parking garage at the Watergate Complex ("Watergate") in Washington, D.C., on May 1, 2015, and the subsequent redesign and reconstruction of the garage. Appellants Joseph and Joan Mancuso (the "Mancusos") appeal the trial court's grants of summary judgment to appellees Grunley Construction Company, Inc. ("Grunley") and Chapel Valley Landscape Company ("Chapel Valley"), collectively (the "Contractors"). The Mancusos alleged that the Contractors' negligence resulted in the collapse of the parking garage and caused a reduction in the size of their parking space and damages to their vehicle and other personal property.

The trial court granted two motions for partial summary judgment in favor of the Contractors. In granting the first motion, the trial court concluded that the Contractors' actions were not the proximate cause of the reduction in the Mancusos' parking space size. In granting the second motion, the trial court concluded that the Mancusos had no right to recover for their remaining claims. This timely appeal followed.

We affirm the trial court's grant of summary judgment to the Contractors as to the parking space reduction claim. However, we reverse the grant of summary judgment to the Contractors as to all of the remaining claims and remand for further proceedings because the Mancusos retain a right to recover for their rental car

reimbursement and personal property claims.

## I.      Factual and Procedural Background

On May 1, 2015, a parking garage at the Watergate Complex in Washington, D.C. collapsed due to construction on the plaza above the garage.[1]  Following the collapse, the garage was redesigned and reconstructed.  Grunley served as the general contractor on the renovation of a plaza above a portion of the parking garage, and Chapel Valley was the landscaping subcontractor.  At the time of the collapse, the Mancusos lived at an apartment within the Watergate Complex, parked their car in the garage, and kept some personal property in their garage space.

Following the collapse, the District of Columbia Department of Consumer and Regulatory Affairs ("DCRA") determined that the Contractors violated D.C. regulations and issued Notices of Infractions to the Contractors.  In response, the Contractors filed timely answers and requested that the case be dismissed with prejudice after settling the issues without a hearing.  The Contractors later filed a Consolidated Motion in Limine to exclude evidence relating to these Notices.  The trial court discussed the motion at a hearing in July 2020, but did not make a final

---

[1] The Watergate Complex includes an underground parking garage, apartment buildings, and commercial buildings.

decision regarding the admissibility of the evidence.

The Mancusos filed a claim with their insurance company, Progressive Direct Insurance Company ("Progressive"), for vehicle damage resulting from the parking garage collapse and the cost of a rental vehicle. After subtracting a $1,000 deductible with respect to the vehicle damage claim, Progressive paid $28,097 to the Mancusos for the vehicle damage and $639.94 to Enterprise for the rental car. After paying out these claims, Progressive attempted to recoup its payment by pursuing recovery against the Contractors. This action was taken pursuant to the insurance policy between Progressive and the Mancusos, which states, in relevant part:

> We are entitled to the rights of recovery that the insured person to whom payment was made has against another, to the extent of our payment. That insured person may be required to sign documents related to the recovery and must do whatever else we require to help us exercise those recovery rights, and do nothing after an accident or loss to prejudice those rights.
>
> When an insured person has been paid by us and also recovers from another, the amount recovered will be held by the insured person in trust for us and reimbursed to us to the extent of our payment. If we are not reimbursed, we may pursue recovery of that amount directly against that insured person.
>
> If an insured person recovers from another without our written consent, the insured person's right to payment under any affected coverage will no longer exist.

Progressive reached an agreement with Chapel Valley's insurer whereby the insurer paid Progressive $6,599.92 and Progressive released all claims against Chapel Valley and the insurer. Progressive also brought an arbitration claim against Grunley's insurer to recover payment. The arbitrator found that there was no evidence that Grunley failed to perform under the contract or contract standards and that Progressive failed to prove that the Contractors breached any duties. The arbitrator therefore determined that Grunley was not liable to Progressive.

In March 2018, the Mancusos filed suit in Superior Court against the Contractors alleging that they suffered damages as a result of the Contractors' negligence. They requested damages for the following losses:

| | |
|---|---|
| 2012 Mercedes-Benz C300, 23,000 Miles | $29,097.04 |
| Parking garage reconstruction loss of 8" width of parking space which now precludes most full size and larger passenger cars, SUVs, Minivan's and larger because of the reduced turning ratio | $15,000.00 |
| Rental vehicle 5/8/15-6/08/15; 9/21/15-9/30/15 | $978.17 |
| Golf clubs, equipment destroyed in vehicle | $2,147.98 |
| Misc. personal property destroyed in vehicle | $611.93 |
| Personal property destroyed in parking space | $134.35 |

In December 2019, the Contractors filed a motion for partial summary

judgment, arguing that the Mancusos failed to allege that the Contractors were the proximate cause of the damages for the reduction in size of the parking space and that the Mancusos waived their right to pursue a claim against the Contractors. After the Mancusos filed an opposition and the Contractors submitted a reply, the trial court granted the motion in part, and denied the motion in part. In partially granting the motion, the trial court found that the Contractors' negligence did not proximately cause the reduction of the size of the parking space. In partially denying the motion, the trial court found that the terms of the insurance policy might not prohibit the Mancusos from recovering against the Contractor.

The Contractors filed a second motion for partial summary judgment in January 2022, arguing that, because Progressive cannot recover from the Contractors due to the claims release and arbitration, the Mancusos, who subrogated their rights to Progressive, were barred from pursuing recovery against the Contractors. Over the Mancusos' opposition, the trial court granted the motion for partial summary judgment. In doing so, the trial court concluded that the Mancusos subrogation of their rights of recovery to Progressive and the fact that Progressive has no right to recover against the Contractors means that the Mancusos have no right to recover against the Contractors.

The Mancusos timely appealed both grants of partial summary judgment.

## II.  Discussion

We review a trial court's grant of summary judgment de novo.  *Cap. River Enterprises, LLC v. Abod*, 301 A.3d 1234, 1241 (D.C. 2023) (citing *Onyeoziri v. Spivok*, 44 A.3d 279, 283 (D.C. 2012)).  In doing so, we "undertake an independent review of the record under the same standard applied by the trial court in its consideration of the summary judgment motion." *Onyeoziri*, 44 A.3d at 283.  Under this standard, "[t]he moving party has the burden of demonstrating that there is no genuine issue of material fact, after the evidence and all inferences from the evidence are drawn in favor of the non-moving party." *Id.* at 284.  In conducting our review, however, the role of this court is not to resolve factual issues as factfinder, "but rather to review the record to determine if there is a genuine issue of material fact on which a jury could find for the non-moving party." *Id.*  (citing *Holland v. Hannan*, 456 A.2d 807, 814-15 (D.C. 1983)).  We affirm a grant of summary judgment if there is no genuine dispute as to any material fact on which the jury could find for the non-moving party.   Sup. Ct. R. Civ. P. 56(a)(1); *Tolu v. Ayodeji*, 945 A.2d 596, 601 (D.C. 2008); *Onyeoziri*, 44 A.3d at 284.  However, we will reverse the grant of summary judgment "if an impartial trier of fact, crediting the non-moving party's evidence, and viewing the record in the light most favorable to the non-moving party, may reasonably find in favor of that party." *Tolu*, 945 A.2d at 601 (internal quotation

marks omitted) (quoting *Weakley v. Burnham Corp.*, 871 A.2d 1167, 1173 (D.C. 2005)).

Whether the trial court properly granted partial summary judgment to the Contractors turns on whether there was no genuine dispute of material fact that: (1) the Contractors' negligence caused the reduction of the Mancusos' parking space; and (2) all of the Mancusos' claims against the Contractors are barred. *See Cap. River Enterprises*, 301 A.3d at 1241. Additionally, the parties dispute the admissibility of the DCRA infractions.

## A. Parking Space Reduction Claim

The Mancusos contend that the trial court erred when it failed to find that the Contractors were not the proximate cause of the reduction in the size of the parking space due to the collapsing of the parking garage. Instead, they argue that the Contractors are liable for the reduction in the size of the parking space because the reconfiguring of their parking space was a foreseeable result of the Contractors' negligence in causing the garage collapse. We disagree and conclude that the redesign of the parking garage and the resulting restructuring of the Mancusos' parking space were superseding causes that relieve the Contractors of liability. Thus,

the trial court did not err in granting the Contractors' motion for summary judgment on the parking space reduction claim.

### 1. Legal Standard

To establish a negligence claim in the District of Columbia, "a plaintiff must demonstrate that: (1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, and (3) the breach of duty proximately caused damage to the plaintiff." *KS Condo, LLC v. Fairfax Vill. Condo. VII*, 302 A.3d 503, 507 (D.C. 2023) (internal quotation marks omitted) (quoting *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 793 (D.C. 2011) (en banc)). This court defines proximate causation as "that cause which, in natural and continual sequence, unbroken by any efficient intervening cause, produces the injury and without which the result would not have occurred." *District of Columbia v. Zukerberg*, 880 A.2d 276, 281 (D.C. 2005) (internal quotation marks omitted) (quoting *St. Paul Fire & Marine Ins. Co. v. James G. Davis Constr. Corp.*, 350 A.2d 751, 752 (D.C. 1976)). "Proximate cause has two components: cause-in-fact and [foreseeability]." *Majeska v. District of Columbia*, 812 A.2d 948, 950 (D.C. 2002) (internal quotation marks omitted) (quoting *District of Columbia v. Carlson*, 793 A.2d 1285, 1288 (D.C. 2002)).

In determining cause-in-fact, this court applies the Restatement of Torts "substantial factor" test, which states that "the actor's negligent conduct is a legal cause of harm to another if . . . [their] conduct is a substantial factor in bringing about the harm." Restatement (Second) of Torts § 431 (1965); *Majeska*, 812 A.2d at 951. In determining whether the actor's conduct is a substantial factor in bringing about harm to another, the Restatement (Second) of Torts directs us to consider:

> (a) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it;
>
> (b) whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible;
>
> (c) lapse of time.

Restatement (Second) of Torts § 433 (1965).

Regarding foreseeability, this court has held that, even when a defendant's actions were the cause-in-fact of the injury, "a defendant may not be held liable for harm actually caused where the chain of events leading to the injury appears 'highly extraordinary in retrospect.'" *Majeska*, 812 A.2d at 951 (quoting *Carlson*, 793 A.2d at 1290). However, a defendant will be held liable for resulting harm, even despite

an intervening event in the chain of causation, if the danger of the intervening act should have been reasonably anticipated and protected against. *Id.*

## 2. Analysis

It is an undisputed material fact that the Contractors were not involved in the reconstruction or redesign of the parking garage or the Mancusos' parking space. Instead, the Mancusos argue that the rebuilding of the garage with a reduction in their parking space was caused by the collapse resulting from the Contractors' negligence. While the Mancusos may be able to establish that the Contractors' negligence was the cause-in-fact of the rebuilding of the garage, they fail to demonstrate how the collapse resulted in a reduced parking space, especially when the Contractors were not involved in the redesign or reconstruction of the garage. Here, the destruction of a parking garage led to the need for the reconstruction of that garage. However, the redesign of the parking garage is too attenuated from the Contractors' negligence because it is a contributing factor that had "such a predominant effect" in reducing the size of the parking space so "as to make the effect of the [Contractors'] negligence insignificant and, therefore, to prevent it from being a substantial factor." Restatement (Second) of Torts § 433, cmt. d. Further, the Contractors' negligence would not have necessarily resulted in a reduction of the

parking space size had the intervening actor who redesigned the garage not chosen to reduce the parking space sizes. *See id*. cmt. e.

Next, the reduction in the size of the Mancusos' parking space was not a foreseeable result of the collapse of the parking garage.[2] Rather, the redesign of the parking garage and the reconfiguring of the parking space were superseding causes, which broke the chain of causation and relieved the Contractors of liability. This court has defined a superseding cause as an act of a third party which, by its intervention and lack of reasonable foreseeability, breaks the chain of causation and relieves the initial actor of liability to the injured party, even where the initial actor's negligence is a substantial factor in bringing about the third party's act. *Convit v. Wilson*, 980 A.2d 1104, 1126 (D.C. 2009); *Butts v. United States*, 822 A.2d 407, 418 (D.C. 2003) (citing Restatement (Second) of Torts § 440 (1965)); *McKethean v. WMATA*, 588 A.2d 708, 716 (D.C. 1991).

---

[2] There is no indication in the record that the Contractors had knowledge that the parking garage would have to be rebuilt to specific standards or that the garage collapsed in such a way as to require it to be rebuilt a certain way. There is also no evidence in the record as to why the garage was redesigned to reduce the size of parking spaces rather than rebuilt exactly how it was before the collapse.

This court has previously held that an unforeseeable superseding act can break the chain of causation between the appellee's alleged negligence and the appellant's injury, thus absolving the appellee of liability. *See St. Paul Fire & Marine Ins. Co.*, 350 A.2d at 752-54 (in viewing the evidence with all favorable inferences to the appellant, we held that the appellant failed to show that appellee's negligence was the proximate cause of their injuries where the intervening act of arson was not reasonably foreseeable and the only asserted negligence was related to the accumulation of trash, which was not shown to be flammable); *see also McKethean,* 588 A.2d 711, 716 (affirming a grant of summary judgment for the District because the driver's conduct "was an unforeseeable intervening cause which severed the chain of causation between the defective median and the accident," thus absolving the District of liability).

Here, even when viewing the evidence and drawing all inferences in the light most favorable to the Mancusos, we determine that there is no genuine issue of material fact as to whether the Contractors proximately caused the reduction in the size of the Mancusos' parking space. *See Onyeoziri*, 44 A.3d at 284. The rebuilding and restructuring of the parking garage, by a third party, in a way that reduced the size of the Mancusos' parking space was an intervening act that was not a reasonably foreseeable result of the Contractors' negligence. As in *St. Paul Fire*, there is no

evidence here to suggest that a smaller parking space was reasonably foreseeable following the collapse of a parking garage. 350 A.2d at 753. In fact, there is no evidence that the Contractors participated in the reconstruction at all. The only related evidence in the record comes from the Contractors' uncontroverted affidavits, which establish that they were neither involved in the redesign and reconstruction of the garage, nor did they contribute to or supervise the rebuilding of the garage. Although the Contractors' negligence brought about the need to redesign and rebuild the garage, the reconstruction and reduction of the Mancusos' parking space was a superseding cause that broke the chain of causation between the Contractors' liability and the Mancusos' injury. *See McKethean*, 588 A.2d at 716. In other words, the record, even when viewed in favor of the Mancusos, demonstrates that the Contractors' negligence was not a substantial factor in the reduction of the size of the parking space, nor was the reduction a foreseeable result of the Contractors' negligence. *See Onyeoziri*, 44 A.3d at 284.

Therefore, the trial court was correct in determining that the reduction of the size of the parking space was not proximately caused by the Contractors' negligence and we affirm the grant of summary judgment on the parking space reduction claim.

## B. Remaining Claims

In granting summary judgment to the Contractors, the trial court ruled that, as a matter of law, the Mancusos were barred from recovery on their remaining claims to damages: the loss of their vehicle and personal property within the vehicle, as well as their rental car reimbursement. The trial court determined that the insurance agreement between the Mancusos and Progressive—specifically, the subrogation clause—barred the Mancusos' claim. The Mancusos argue that the trial court erred in granting summary judgment and assert that the damages are recoverable as a matter of law because: (1) the applicable clause of the insurance agreement is a contract clause, not a subrogation clause, which does not bar them from suing the Contractors; and (2) the collateral source rule applies. We conclude that the clause was a subrogation clause, and we therefore disagree that the collateral source rule applies in the present case. However, we conclude that the Mancusos only subrogated their right to damages for the rental car reimbursement claims to the extent of Progressive's payment on those claims. While Progressive paid out the entirety of the vehicle damage claims—after subtracting the deductible, it paid out $28,097 of the $29,097.04 in damages that the Mancusos alleged—it did not pay out the entirety of the rental car reimbursement claims—it only paid out $639.94 of the $978.17 in rental car reimbursement. Given the language of the subrogation clause,

we conclude that the Mancusos retain a right to the remainder of their rental car reimbursement claims. Progressive also did not pursue or pay out damages for the Mancusos' personal property claims and, for reasons similar to those stated above, the Mancusos retain a right to pursue those damages against the Contractors as well. Thus, we hold that the trial court's grant of summary judgment as to all of the claims was improper.

## 1. Subrogation

The Mancusos argue that the trial court erred in barring them from suing and recovering any damages from the Contractors because they subrogated their rights to Progressive. They assert that nothing in the insurance agreement barred them "from retaining any amount in excess of the amount paid out in reimbursement to Progressive." We agree and conclude that the Mancusos only subrogated their rights as to the amount paid out by Progressive for the vehicle damage and rental car reimbursement claims and did not subrogate their rights to the personal property claims or the deductible.

Subrogation is the "substitution of one person for another . . . allow[ing] [one person] to stand in the shoes of another and assert that person's rights against the

defendant." *HSBC Bank USA, N.A., v. Mendoza*, 11 A.3d 229, 232 n.4 (D.C. 2010) (quoting Dan B. Dobbs, Law of Remedies § 4.3, at 404 (2d ed. 1993)).

The insurance agreement between the Mancusos and Progressive states, in relevant part:

> **We** are entitled to the rights of recovery that the insured person to whom payment was made has against another, to the extent of **our** payment. That insured person may be required to sign documents related to the recovery and must do whatever else **we** require to help **us** exercise those recovery rights, and do nothing after an accident or loss to prejudice those rights.
>
> When an insured person has been paid by **us** and also recovers from another, the amount recovered will be held by the insured person in trust for **us** and reimbursed to **us** to the extent of our payment. If we are not reimbursed, **we** may pursue recovery of the amount directly against that insured person.

The parties dispute whether this provision in the insurance agreement, *see supra*, acts as a subrogation clause or a contract clause. In the view of the trial court and the Contractors, the provision is a subrogation clause that bars the Mancusos' right to recovery against the Contractors because of Progressive's settlement with Chapel Valley's insurer and arbitration loss against Grunley. The Mancusos contend that the provision is a contract clause allowing them to file suit against the Contractors and retain any recovery in excess of the amount Progressive paid out to

them. We conclude that this provision is a subrogation clause that "entitles Progressive to the underlying 'right' that [the Mancusos] have to recover damages." However, the entitlement only extends as far as the amount paid out by Progressive to the Mancusos on each claim.

This court construes insurance policies according to contract principles. *Rose's 1, LLC v. Erie Ins. Exch.*, 290 A.3d 52, 60 (D.C. 2023) (citing *Fogg v. Fid. Nat'l Title Ins. Co.*, 89 A.3d 510, 514 (D.C. 2014)). "Contractual interpretation is a legal question, which this court reviews *de novo*." *District of Columbia v. D.C. Contract Appeals Bd.*, 145 A.3d 523, 530 (D.C. 2016) (citing *Tillery v. D.C. Contract Appeals Bd.*, 912 A.2d 1169, 1176 (D.C. 2006)). In examining an insurance policy, we first assess the plain language used, giving reasonable effect to the policy's provisions and avoiding an interpretation that would render any provision meaningless or incompatible with the policy as a whole. *Rose's 1*, 290 A.3d at 60.

Here, the provision plainly states that Progressive is "entitled to the rights of recovery that the [Mancusos] ha[ve] against [the Contractors], to the extent of [Progressive's] payment." In other words, the provision is a subrogation clause, which allowed Progressive to stand in the shoes of the Mancusos and assert the

Mancusos' rights with respect to their claims against the Contractors. *See HSBC Bank*, 11 A.3d at 232 n.4. Both parties agree to this characterization.

The language in the insurance policy does not prevent the Mancusos from obtaining their own recovery so long as they reimburse any recovery to Progressive to the extent of Progressive's payment. Additionally, as the trial court noted, the insurance policy's subrogation clause "provides for more than just reimbursement to Progressive of any amount recovered by [the Mancusos], it entitles Progressive to the underlying 'right' that [the Mancusos] have to begin with." The Mancusos subrogated their vehicle damage and rental car reimbursement claims to Progressive to the extent of Progressive's payment on those claims. In other words, the Mancusos can only pursue recovery against the Contractors for the remaining damages on claims that Progressive has not paid out.[3] Pursuant to the subrogation clause, Progressive is only entitled to the rights of recovery to the extent of its payment. Here, the Mancusos filed a claim with Progressive and received payment

---

[3] Alternatively, pursuant to the reimbursement language, the Mancusos may pursue the entirety of their claims against the Contractors. They would just be required to reimburse Progressive for the amount already paid out. For instance, if the Mancusos were to pursue the rental car reimbursement claim against the Contractors and receive $978.17, they would need to reimburse Progressive the $639.94 that Progressive paid out.

for the vehicle damage and the rental car. However, while the Mancusos received payment in full for their vehicle damage claim, they did not receive full payment for the rental car reimbursement claim. Under the subrogation clause, we determine this to mean that the Mancusos only subrogated their rights to the amount paid out by Progressive—$639.94 of the $978.17—in damages for the rental car reimbursement claim. Therefore, the Mancusos retain a right to pursue damages against the Contractors for the remaining $338.23 in rental car reimbursement.

Similarly, we conclude that the Mancusos are not barred from pursuing their remaining claims for the personal property that was in the vehicle and in the parking space that was destroyed against the Contractors—i.e., golf clubs, equipment, and miscellaneous personal property. The Mancusos are also not barred from pursuing their claim to the deductible. The insurance agreement between the Mancusos and Progressive states that Progressive "will attempt to recover any deductible incurred by an insured person under this policy unless we are specifically instructed by that person not to pursue the deductible." The record does not reflect that Progressive exercised its subrogation rights to pursue recovery of the deductible against the Contractors. We thus conclude that the Mancusos retain a right to pursue recovery for the deductible against the Contractors. The Contractors also do not dispute that the Mancusos have a right to pursue the personal property claims. They note that

the Mancusos only subrogated their right to claims made to, and paid out by, Progressive and that those claims did not include the personal property claims or the deductible. Additionally, Progressive did not assume the right of the Mancusos to pursue recovery against the Contractors for these claims. Therefore, because the Mancusos did not subrogate their rights to the personal property claims and the deductible to Progressive, they are free to seek recovery against the Contractors. Accordingly, we hold that the trial court erred in granting summary judgment to the Contractors as to the rental car reimbursement and personal property claims, and reverse and remand for further proceedings.

## 2. Collateral Source Rule

Despite the subrogation clause, the Mancusos argue that they should be able to recover for damages to their vehicle under the collateral source rule. Generally, "the collateral source rule provides 'that when a tort plaintiff's items of damage are reimbursed by a third-party who is independent of the wrongdoer, the plaintiff may still seek full compensation from the tortfeasor *even though the effect may be a double recovery.*'" *Caglioti v. District Hosp. Partners, Lp*, 933 A.2d 800, 815 (D.C. 2007) (quoting *Jacobs v. H.L. Rust Co.*, 353 A.2d 6, 7 (D.C. 1976)); *Bushong v. Park*, 837 A.2d 49, 57 (D.C. 2003). The principle underlying this rule is that "payments to the injured party from a collateral source [should not be] allowed to

diminish damages recoverable from the wrongdoer," and it applies when "payment to the injured party came from a source wholly independent of the tortfeasor." *Hardi v. Mezzanotte*, 818 A.2d 974, 984 (D.C. 2003). *See also District of Columbia v. Jackson*, 451 A.2d 867, 871 (D.C. 1982) (noting that the collateral source rule is most commonly applied when the source of the benefit is "truly [] not connected in any way with the tortfeasor").

However, the collateral source rule does not apply where an insurance contract contains a standard subrogation clause "by which the [insured party] surrender[s] to [the insurer] all rights [they] might have exercised against [the tortfeasor] with respect to amounts paid by [the insurer]." *Designers of Georgetown, Inc. v. E. C. Keys & Sons*, 436 A.2d 1280, 1282 (D.C. 1981). Because we have already determined that the Progressive policy contains a subrogation clause and that the Mancusos have subrogated their rights to seek recovery for the vehicle damage and the rental car reimbursement to Progressive, we conclude that the collateral source rule does not apply to those claims. *See id.*

That said, the collateral source rule also does not apply to the remaining personal property claims or the deductible because the Mancusos did not receive payment on those claims from an independent third party, *see Hardi*, 818 A.2d at 984, and, as discussed *supra*, the Mancusos did not subrogate their rights to these

claims to Progressive. Therefore, the Mancusos are entitled to seek recovery for the remaining personal property claims.

## C. DCRA Infractions

The trial court did not make a final ruling on the admissibility of evidence of the DCRA notices of infractions. At the July 15, 2020, status hearing, the judge noted that she was "inclined to not bring the evidence of the notices of infractions . . . ." but will "have a final ruling at the pretrial." However, this case was disposed of on summary judgment, before any opportunity for pretrial proceedings or a final decision, and thus the issue of the admissibility of the infractions remains unresolved. Because we are remanding for further proceedings on the personal property claims, we leave it to the trial court to decide the appropriateness of admitting the DCRA notices of infractions.

## III.   Conclusion

Accordingly, we affirm the trial court's grant of summary judgment as to the vehicle damage claims, but reverse the grant of summary judgment as to the Mancusos' rental car reimbursement and personal property claims and remand for further proceedings.

*So ordered.*